WIEAND, Judge.
 

 This is an action by a would-be legatee against a lawyer who failed to have a will executed by the testator prior to the testator’s death. A jury found that the lawyer’s failure consti
 
 *208
 
 tuted a breach of a third party beneficiary contract and awarded damages to the would-be beneficiary. The trial court denied post-trial motions, and judgment was entered on the verdict. After careful review, we reverse.
 

 Carl Lindsay, Esquire, is a member of the Pennsylvania Bar and has practiced law in Bucks County for many years. In 1979, he drafted a will for Arthur Blain, in which Phyllis Murphy, a friend, was named as sole beneficiary and executrix. This will was duly executed. In November, 1984, Blain was admitted to the Doylestown Hospital, where he was confined to the Intensive Care Unit following a double femoral bypass. While there, Blain was visited by his longtime friend, James Gregg. According to Gregg’s subsequent testimony, he raised with Blain the matter of a will; and after some discussion, Blain directed him to contact Lindsay and have him draft a new will making a substantial bequest to Gregg and also naming Gregg as executor. Also to be included in the will were bequests in favor of the Bucks County SPCA and St. Alban’s Episcopal Church of Syracuse, New York.
 

 Thereafter, Gregg called Lindsay and told him that Blain was in the Intensive Care Unit, was in serious condition, and desired a new will which was to be drafted and executed the same day. To emphasize the need for haste, but without any authority from Blain, Gregg told Lindsay that if a new will could not be drafted and executed the same day, he, Gregg, would find another lawyer to do the job.
 

 Later that evening, Lindsay appeared at Blain’s bedside with the draft of a new will. Lindsay testified that Blain seemed to be unconcerned about the document but did say that the revised will was acceptable. Because he found the circumstances unusual, Lindsay recommended that the execution of the will be witnessed by two subscribing witnesses. When Lindsay was unable to find persons at the hospital to act as subscribing witnesses, he suggested that he return the following morning. This, he said, would also enable him to correct the name of one of the charitable beneficiaries named in the will. Blain did not voice any objection to this procedure. Lindsay, however, did not return until shortly after
 
 *209
 
 noon on the following day. When he arrived at the hospital, he found that Blain had been transferred to a Philadelphia hospital where he died later that afternoon.
 

 Gregg filed a civil action against Lindsay, alleging that he, Gregg, was a third party beneficiary to an agreement between Blain and Lindsay. This contract, he alleged, had been breached by Lindsay’s failure to have the new will executed at Blain’s bedside on the night before he died.
 

 When considering an appeal from an order denying a motion for judgment n.o.v., our scope of review is narrow. All of the evidence, and all reasonable inferences drawn therefrom, must be considered in the light most favorable to the verdict winner.
 
 Robertson v. Atlantic Richfield Petroleum Products Co.,
 
 371 Pa.Super. 49, 58, 537 A.2d 814, 819 (1987),
 
 appeal denied,
 
 520 Pa. 590, 551 A.2d 216 (1988). Only in clear cases, where no two reasonable persons could fail to agree that the verdict was improper, should judgment n.o.v. be granted.
 
 Geyer v. Steinbronn,
 
 351 Pa.Super. 536, 549, 506 A.2d 901, 908 (1986). Where “the law permits no recovery upon the facts which have been alleged ...” an order denying judgment n.o.v. may be reversed.
 
 Henze v. Texaco, Inc.,
 
 352 Pa.Super. 538, 541, 508 A.2d 1200, 1202 (1986). Lindsay argues that, as a matter of law, no recovery can be allowed under the facts of this case.
 

 In
 
 Guy v. Liederbach,
 
 501 Pa. 47, 459 A.2d 744 (1983), the Supreme Court specifically retained the “requirement that [a] plaintiff must show an attorney-client relationship or a specific undertaking by the attorney furnishing professional services, ... as a necessary prerequisite for maintaining [an action] in trespass on a theory of negligence.”
 
 Id.
 
 at 58, 459 A.2d at 750. See also:
 
 Hatbob v. Brown,
 
 394 Pa.Super. 234, 248, 575 A.2d 607, 614 (1990).
 
 [1]
 
 What the Court took away with one hand, however, it gave back, in part, with the other. Thus, it created a right of recovery on the theory of a third
 
 *210
 
 party beneficiary contract in a narrow class of cases in which it was clear that an innocent party had been injured by legal malpractice in the execution of an otherwise valid will. As the Superior Court observed in
 
 Manor Junior College v. Kaller’s Inc.,
 
 352 Pa.Super. 310, 507 A.2d 1245 (1986), the Court
 

 adopted the Restatement (Second) of Contracts Section 302 (1979) as an acceptable method to determine the rights of a person claiming the status of third party beneficiary but, as the court did so, it repronounced the basic principle established in
 
 Spires [v. Hanover Fire Ins. Co.,
 
 364 Pa. 52, 70 A.2d 828 (1950) ] and took pains to make clear that the application of the Restatement was restricted to a quite “narrow class” and is to be seen as a supplement to the
 
 Spires
 
 standard.
 

 Id.,
 
 352 Pa.Super. at 314, 507 A.2d at 1247 (footnote omitted). Under this theory, the fact that the obligor knows that his services will benefit a third person is not alone sufficient to vest in such third person the rights of a third person beneficiary.
 
 Marsteller Community Water Authority v. P.J. Lehman Engineers,
 
 413 Pa.Super. 387, 393, 605 A.2d 413, 416 (1992),
 
 appeal denied,
 
 533 Pa. 601, 617 A.2d 1275 (1992). There is a two part test, the Court said, in determining whether one is a third party beneficiary.
 

 (1) the recognition of the beneficiary’s right must be “appropriate to effectuate the intention of the parties,” and (2) the performance must “satisfy an obligation of the promisee to pay money to the beneficiary” or “the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.” The first part of the test sets forth a standing requirement. For any suit to be brought, the right to performance must be “appropriate to effectuate the intentions of the parties.” This general condition restricts the application of the second part of the test, which defines the intended beneficiary as either a creditor beneficiary (§ 302(l)(a)) or a donee beneficiary (§ 302(l)(b)), though these terms are not themselves used by Restatement (Second). Section 302(2) defines all beneficiaries who are not intentional beneficiaries as incidental
 
 *211
 
 beneficiaries. The standing requirement leaves discretion with the trial court to determine whether recognition of third party beneficiary status would be “appropriate.” If the two steps of the test are met, the beneficiary is an intended beneficiary “unless otherwise agreed between promisor and promisee.”
 

 Applying these general considerations and Restatement (Second) § 302 to the case of beneficiaries under a will, the following analysis emerges. The underlying contract is that between the testator and the attorney for the drafting of a will. The will, providing for one or more named beneficiaries, clearly manifests the intent of the testator to benefit the legatee. Under Restatement (Second) § 302(1), the recognition of the “right to performance in the beneficiary” would be “appropriate to effectuate the intention of the parties” since the estate either cannot or will not bring suit. Since only named beneficiaries can bring suit, they meet the first step standing requirement of § 302. Being named beneficiaries of the will, the legatees are intended, rather than incidental, beneficiaries who would be § 302(l)(b) beneficiaries for whom “the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.” In the case of a testator-attorney contract, the attorney is the promisor, promising to draft a will which carries out the testator’s intention to benefit the legatees. The testator is the promisee, who intends that the named beneficiaries have the benefit of the attorney’s promised performance. The circumstances which clearly indicate the testator’s intent to benefit a named legatee are his arrangements with the attorney and the text of his will.
 

 Guy v. Liederbach, supra
 
 501 Pa. at 60-61, 459 A.2d at 751-752 (footnote omitted). In order for a would-be beneficiary to recover as a third party beneficiary, he or she must show a breach of contract between the lawyer and the testator. “In the case of a testator-attorney contract the attorney is the promisor who promises to draft a will which carries out the testator’s intent to benefit the [beneficiary].”
 
 Hatbob v. Brown, supra
 
 394 Pa.Super. at 250-251, 575 A.2d at 615.
 

 
 *212
 
 The use of this approach is warranted only when the circumstances are analogous to those in
 
 Guy v. Liederbach, supra,
 
 or are equally compelling.
 
 Manor Junior College v. Roller’s Inc., supra
 
 352 Pa.Super. at 315-316, 507 A.2d at 1248. In
 
 Guy v. Liederbach, supra,
 
 the intent to benefit a third person had been clear from the execution of the written will, and the alleged negligence of the lawyer had been in allowing the person named as executrix and beneficiary to serve also as witness to the will.
 

 The issue before this Court in the instant case is whether
 
 Guy v. Liederbach, supra,
 
 should be expanded to allow recovery where, as here, (1) the new will was never executed by the testator, and (2) the facts send a mixed signal regarding the person to whom the lawyer owed a primary duty of loyalty.
 

 Courts in other jurisdictions have wrestled with similar factual scenarios and have reached conflicting results. Some courts continue to follow the rule that persons outside the attorney-client relationship have no cause of action against an attorney for his failure to perform a duty owed to his client.
 
 Dickey v. Jansen,
 
 731 S.W.2d 581 (Tex.App.1987);
 
 Berry v. Dodson, Nunley & Taylor, P.C.,
 
 717 S.W.2d 716 (Tex.App.1986),
 
 judgment set aside,
 
 729 S.W.2d 690 (Tex.1987);
 
 Simon v. Zipperstein,
 
 32 Ohio St.3d 74, 512 N.E.2d 636 (1987). Others, although agreeing that an attorney may be held accountable where an intended legacy has been frustrated, refuse to recognize liability where the attorney purported to be acting in the best interest of his client,
 
 Charia v. Hulse,
 
 619 So.2d 1099 (La.App.1993), or were the intent to benefit the third party was not affirmatively expressed in an executed will.
 
 Espinosa v. Sparber, Shevin, Shapo, Rosen & Heilbronner,
 
 586 So.2d 1221, 1223 (Fla.App.1991),
 
 affirmed,
 
 612 So.2d 1378 (Fla.1993). Accord:
 
 Miami Beach Community Church, Inc. v. Stanton,
 
 611 So.2d 538, 538 (Fla.App.1992) (per curiam);
 
 DeMaris v. Asti,
 
 426 So.2d 1153, 1154 (Fla.App.1983). Still others recognize a cause of action sounding in either trespass or assumpsit.
 
 Auric v. Continental Casualty Co.,
 
 111 Wis.2d 507, 513-15, 331 N.W.2d 325, 329 (1983) (“Public policy supports the imposition of liability on an attorney who
 
 *213
 
 acts negligently in drafting or executing a will resulting in a loss to the beneficiary named therein.”);
 
 Lucus v. Hamm,
 
 56 Cal.2d 583, 15 Cal.Rptr. 821, 364 P.2d 685 (Cal.1961),
 
 cert. denied,
 
 368 U.S. 987, 82 S.Ct. 603, 7 L.Ed.2d 525 (1962). Pennsylvania has followed the Restatement’s approach and has led a small group to adopt similar reasoning. See, e.g:
 
 Hale v. Groce,
 
 304 Or. 281, 744 P.2d 1289 (1987);
 
 Herman v. Frey,
 
 537 N.E.2d 529 (Ind.App.1989).
 

 In
 
 Espinosa v. Sparber, Shevin, Shapo, Rosen & Heilbronner, supra,
 
 the defendant-lawyer prepared a new will at the client’s request to name as an additional beneficiary a daughter who had been born after the prior will. A dispute arose, however, concerning the value of the estate and, before it was resolved, the client died without having executed the new will. The court denied a claim by the daughter against the lawyer, holding that she would not be allowed to rely on extrinsic evidence that the testator’s intent was other than as expressed in his validly executed -will. The court thereby limited a third party action to those instances in which the lawyer’s conduct had frustrated an intent expressed in the executed will itself.
 
 Id.
 
 at 1223. This, the court concluded, was necessary to protect the integrity of solemnly executed wills as well, as to prevent fraudulent claims.
 
 Id.
 
 at 1224.
 

 In
 
 Krawczyk v. Stingle,
 
 208 Conn. 239, 543 A.2d 733 (1988), the Supreme Court of Connecticut evidenced its understanding of the far-reaching consequences of allowing actions by disappointed, would-be beneficiaries against lawyers who drafted wills which remained unexecuted by the testator. There, the decedent, prior to undergoing open heart surgery, had employed a lawyer to prepare testamentary documents, and an appointment had been made for signing the same. Prior to signing the will, however, the plaintiff, a beneficiary designate, called the lawyer and cancelled the appointment because the testator had suffered a massive heart attack and was in intensive care. The lawyer put the documents aside and did not immediately complete the drafting thereof. On the following day, however, he was called by the plaintiff and asked to bring the documents to the hospital. By the time the
 
 *214
 
 documents were completed and taken to the hospital, the client had died. In an action against the lawyer, it was alleged that he had failed to act with due diligence by failing to complete the documents after learning of the client’s hospitalization. The Supreme Court of Connecticut, being concerned about a lawyer’s undivided loyalty to the client, refused to allow recovery. The Court said:
 

 A central dimension of the attorney-client relationship is the attorney’s duty of “[e]ntire devotion to the interest of the client.” This obligation would be undermined were an attorney to be held liable to third parties if, due to the attorney’s delay, the testator did not have an opportunity to execute estate .planning documents prior to death. Imposition of liability would create an incentive for an attorney to exert pressure on a client to complete and execute estate planning documents summarily. Fear of liability to potential third party beneficiaries would contravene the attorney’s primary responsibility to ensure that the proposed estate plan effectuates the client’s wishes and that the client understands the available options and the legal and practical implications of whatever course of action is ultimately chosen. These potential conflicts of interests are especially significant in the context of the final disposition of a client’s estate, where the testator’s testamentary capacity and the absence of undue influence are often central issues.
 

 Id.
 
 at 246-247, 543 A.2d at 736 (citations omitted).
 

 In the instant case, there was no breach of contract between the decedent and his lawyer. It was Gregg and not Blain who had called Lindsay and who had directed him regarding the preparation of a will. Lindsay’s first direct contact with Blain came later the same day when Lindsay took the will which he had prepared to Blain’s hospital room. There, according to Lindsay, Blain said the will was acceptable but appeared unconcerned and disinterested. For this reason and because of the unusual circumstances leading to the drafting of the will, Lindsay sought several subscribing witnesses. Finding none, he said, he told Blain that there was a correction to be made regarding the name of one of the
 
 *215
 
 charities and that he would return the following morning when the will could be executed and witnessed. Lindsay testified that Blain agreed to this. Although Lindsay’s explanation was for the jury’s consideration and may have been rejected, it is clear that the will was not executed at that time. In
 
 Guy v. Liederbach, supra,
 
 the Supreme Court found that the executed will had firmly evidenced the existence of the third party beneficiary contract intended to benefit the legatee. Here, however, there was no executed will which, under such an analysis, could clearly establish an intent by the testator to benefit the third person. Where one seeks to prove the existence of an oral contract for the making of a will, he assumes an exacting evidentiary burden which requires clear, direct and precise evidence of each of the elements to a valid contract.
 
 Hatbob v. Brown, supra
 
 394 Pa.Super. at 239-240, 575 A.2d at 609. Thus, even if one rejects Lindsay’s explanation in full, there is no competent evidence of that which transpired between Lindsay and Blain at the hospital sufficient to permit a finding that they had entered a contract to make a will at that time.
 

 To hold otherwise, under the circumstances of this case, would open the doors to mischief of the worst type. To permit a third person to call a lawyer and dictate the terms of a will to be drafted for a hospitalized client of the lawyer and to find therein a contract intended to benefit the third person caller, even though the will was never executed, would severely undermine the duty of loyalty owed by a lawyer to the client and would encourage fraudulent claims. See:
 
 Charia v. Hulse, supra.
 

 We reject appellee’s argument that he was acting as agent for Blain. Even if his initial contact with Lindsay had been authorized by Blain, when Lindsay and Blain met in Blain’s hospital room, they were acting face to face and without assistance from any intermediary. If Lindsay’s version of this meeting is to be rejected, the fact remains that, for one reason or another, the will was not then executed. At this point in time, therefore, there was no evidence of a contract by which the parties intended to confer a present benefit on Gregg.
 

 
 *216
 
 Even if one were somehow to find a contract between Biain and Lindsay to confer a benefit on Gregg, one is hard pressed to find that Lindsay breached his contract. Lindsay drafted the will which Gregg had instructed him to draft and took it to Blain’s hospital room later on the same day. Biain, according to Lindsay’s testimony, told him that it had not been necessary to come and readily agreed to postpone the signing of the will until the following day. Whatever the explanation for this, it is uncontradicted that Biain, in fact, did not execute the will that night and that Lindsay was to return the following day. This Lindsay did, at or about 1:00 p.m. Where, one must ask, is the breach of contract? There is no evidence of an agreement that Lindsay, in all events, would have the will executed that first night or that he was in some way required to disregard his client’s best interests by making certain of the client’s intent and understanding in order to serve Gregg.
 
 [2]
 

 This is nothing more than a case in which the testator died before he had executed a new will. His death did not confer upon a disappointed beneficiary a cause of action against the lawyer who drafted the will and who, with the testator’s consent, deferred execution of the will until the following day.
 

 Because we conclude that, as a matter of law, there can be no recovery in this action, we do not consider the alleged trial errors asserted in support of appellant’s motion for new trial.
 

 Judgment reversed.
 

 CAVANAUGH and OLSZEWSKI, JJ., concur in the result.
 

 [1]
 

 . Appellee’s argument in this case has frequently sounded in terms of negligence and malpractice, but under
 
 Guy v. Liederbach, supra,
 
 there can be no recovery for negligence because there was no attorney-client relationship between Gregg and Lindsay.
 

 [2]
 

 . We reject appellee’s attempt to find a contract in the note of a nurse that Lindsay would "return in the a.m." There is no evidence of any contract obligating appellant to return to the hospital before noon.