**Sherrie Ann KRASEVIC, Robert F. Krasevic, Guardian Ad Litem of Sherri Ann Krasevic, An Incapacitated Person & Robert F. Krasevic and Patsy Ann Krasevic, Appellees,**

v.

**GOODWILL INDUSTRIES OF CENTRAL PENNSYLVANIA, INC., Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 12, 2000.

Decided Nov. 16, 2000.

Reargument Denied Jan. 25, 2001.

---

Richard B. Morrison, Philadelphia, for appellant.

John C. Dowling, Rhoads & Simon, L.L.P., Harrisburg, for Com.

Before JOHNSON, TODD and TAMILIA, JJ.

TODD, J.:

¶ 1 Goodwill Industries of Central Pennsylvania, Inc. ("Goodwill") appeals the judgment entered against it in a negligence action brought by Sherri Ann Krasevic following her sexual assault by a co-worker at a Goodwill training facility. We affirm.

¶ 2 Krasevic suffers from moderate to severe mental retardation. Although she is 33 years of age, she has the approximate mental age of seven years. She began working at Goodwill in 1989 in a "sheltered workshop" program, a highly structured vocational program run under the direct supervision of Goodwill employees.

¶ 3 On August 4, 1994, Krasevic was sexually assaulted and raped by Durell Stern, a nondisabled person, in a women's restroom at Goodwill's training facility where she had gone to use the toilet while on an unsupervised break from her work in the shoe department. During the attack, Stern threatened Krasevic that if she told anyone about the incident, he would cut her throat. On the previous day, Stern had followed Krasevic into the bathroom and, against her will, touched her breasts and kissed her.[1] At the time of these incidents, Stern was an employee of Susquehanna Employment & Training Corporation ("SETCO"), working under the supervision of Goodwill at its facility under a contract between Goodwill and SETCO. Stern, a minor, later confessed to the assault and was adjudicated delinquent on the charge of indecent assault.

¶ 4 Krasevic, and her parents, as her guardians, brought this negligence action

---

1. Krasevic testified that Stern previously had touched her breasts in the bathroom. (N.T., 4/29/99, at 90.) Stern testified that he kissed her in the bathroom the previous day. (*Id.* at 152.)

alleging that Goodwill's failure to supervise or monitor bathroom areas during break time directly led to her rape.[2] Indeed, the evidence at trial established that previous sexual assaults had occurred in Goodwill's bathrooms during break times and that Goodwill did not supervise Krasevic or the other employees in its sheltered workshop program during their breaks.

¶ 5 Following a trial which concluded on April 30, 1999, the jury returned a verdict in favor of Krasevic for $500,000. Further, Krasevic's motion for delay damages was granted in the amount of $70,366.60. Following the denial of its post-trial motions, Goodwill filed this timely appeal.

¶ 6 On appeal, Goodwill presents the following issues for our review:

1) Whether the trial court erred in denying Appellant's motion for judgment notwithstanding the verdict ("JNOV") where Appellees failed to offer any evidence of personal animus to overcome the exclusive remedy provision of the Workmen's Compensation Act?

2) Whether the trial court erred in denying Appellant's motion for new trial where the trial court's erroneous jury instruction contravened well settled Pennsylvania law by eliminating the personal animus requirement, essentially directing a verdict in favor of Appellees?

3) Whether the trial court erred in its elimination of the superseding cause defense from the case when it refused Appellant's proposed jury instructions which were necessary and appropriate based on the facts in evidence?

(Appellant's Brief, at 4.)

¶ 7 We begin our analysis by addressing Goodwill's first argument: that the trial court erred in denying its motion for JNOV because Krasevic failed to provide

2. Krasevic's complaint also asserted claims against SETCO, but SETCO was released

evidence of personal animus necessary to overcome the exclusive remedy provision of the Workmen's Compensation Act (the "WCA" or the "Act"). The trial court concluded that a showing of personal animus was not required. We agree.

■■■ ¶ 8 Our standard of review of the trial court's denial of a JNOV is well-settled:

When reviewing the propriety of an order denying JNOV, this Court must determine whether there was sufficient competent evidence to sustain the verdict. *Trude v. Martin*, 442 Pa.Super. 614, 623, 660 A.2d 626, 630 (1995). In making this determination, our scope of review is very narrow: all evidence and all reasonable inferences drawn therefrom must be considered in the light most favorable to the verdict winner. *Gregg v. Lindsay*, 437 Pa.Super. 206, 209, 649 A.2d 935, 937 (1994). JNOV may be granted only in a clear case where the facts are such that no two reasonable minds could fail to agree that the verdict was improper. *Pirozzi v. Penske Olds–Cadillac–GMC*, 413 Pa.Super. 308, 312, 605 A.2d 373, 375, *allocatur denied*, 532 Pa. 665, 616 A.2d 985 (1992). Therefore, we will reverse the trial court's ruling on a motion for JNOV only if there is a clear abuse of discretion or error of law that controlled the outcome of the case. *Scott v. Southwestern Mut. Fire Ass'n.*, 436 Pa.Super. 242, 247, 647 A.2d 587, 590 (1994).

*Johnson v. Hyundai Motor America*, 698 A.2d 631, 635 (Pa.Super.1997).

■■■ ¶ 9 Initially, we note that the WCA is ordinarily the exclusive means of compensation for injuries sustained in the workplace. Under the Act, the employer, in exchange for immunity from suit by injured employees, provides certain compensation to the employees without regard to fault. *See* 77 P.S. §§ 481(a), 1403; *Bar-*

from the case after a settlement was reached.

*ber v. Pittsburgh Corning Corp.*, 521 Pa. 29, 35, 555 A.2d 766, 769–70 (1989).

¶ 10 However, the immunity and exclusivity provisions of the Act have certain exceptions, and Krasevic asserts the applicability of what "loosely" has been called the "personal animus" exception. *See Kohler v. McCrory Stores*, 532 Pa. 130, 136, 615 A.2d 27, 30 (1992). It has also been referred to as the "third party attack" exception. *See, e.g., Vosburg v. Connolly*, 405 Pa.Super. 121, 591 A.2d 1128 (1991); *Mike v. Borough of Aliquippa*, 279 Pa.Super. 382, 421 A.2d 251 (1980).[3] We will use the latter term.

¶ 11 This exception derives from the Act's definition of injury, which provides in relevant part:

> The term "injury arising in the course of his employment," as used in this article, shall not include an injury caused by an act of a third person intended to injure the employe [sic] because of reasons personal to him, and not directed against him as an employe [sic] or because of his employment; . . .

77 P.S. § 411(1).

▮ ¶ 12 According to our Supreme Court, under the third party attack exception, the exclusivity provision of the Act "does not preclude damage recoveries by an employee, based upon employer negligence in maintaining a safe workplace, if such negligence is associated with injuries inflicted by a co-worker for purely personal reasons." *Kohler*, 532 Pa. at 137, 615 A.2d at 30. The Court further stated:

> The act excludes from its coverage attacks upon an employee whether or not they occur while he is pursuing his employer's business and whether or not they are caused by the condition of the employer's premises or by the operation of his business or affairs thereon so long as the reasons for the attack are purely personal to the assailant. In such a

case, the plaintiff is permitted to pursue his common-law remedy.

*Kohler*, 532 Pa. at 137, 615 A.2d at 31 (quoting *Dolan v. Linton's Lunch*, 397 Pa. 114, 125, 152 A.2d 887, 893 (1959)). To set forth a valid cause of action implicating this exception, "an employee must assert that his injuries are *not* work-related because he was injured by a co-worker for purely personal reasons." *Id.* at 137–38, 615 A.2d at 31. However, we note that "[t]here is a rebuttable presumption that an injury is work-related where it occurs on the employer's premises." *Id.* at 136, 615 A.2d at 30.

▮ ¶ 13 Thus, the key to the application of the third party attack exception is the determination, in the context of a given case, that an attack derives from "purely personal reasons," reasons "purely personal to the assailant," rather than from some work-related cause. Unfortunately, *Kohler* is less helpful concerning precisely what are "purely personal reasons" as the case concerned a demurrer for the failure of the plaintiff to allege *at all* that his injuries were not work-related. *See Kohler*, 532 Pa. at 138, 615 A.2d at 31.

¶ 14 Goodwill argues that Krasevic presented no evidence of personal animosity between Krasevic and Stern and no evidence that the attack was based on personal animosity. Krasevic does not contest this. As a result, Goodwill argues that Krasevic's claims must fail because the third party attack exception does not apply and the WCA is her exclusive means of compensation.

¶ 15 Goodwill accurately cites *Hershey v. Ninety–Five Associates*, 413 Pa.Super. 158, 604 A.2d 1068 (1992), and other cases indicating that a showing of personal animus is required. Specifically, in *Hershey* this Court stated that the third party attack exception "has been narrowly construed by our courts to allow recovery only

---

**3.** For its own part, the trial court refers to it as the "third party assault" exception. (Trial

Court Opinion, 9/29/99, at 5.)

in cases where the third party's actions were motivated by a history of personal animosity toward that particular employee." *Id.* at 1069 (citing *Mike v. Borough of Aliquippa*, 279 Pa.Super. 382, 421 A.2d 251 (1980)). However, we believe Goodwill's reliance on *Hershey* is misplaced.

¶ 16 First, *Hershey* and the other cases cited by Goodwill were decided before *Kohler*. Clearly lacking from the Supreme Court's decision in *Kohler* is any requirement that there must be a showing of personal animus;[4] rather, the party claiming the exception must show only that injuries were inflicted for "purely personal reasons", reasons "purely personal to the assailant." *Kohler*, 532 Pa. at 137–38, 615 A.2d at 30–31.

⬛ ¶ 17 Second, the cited proposition from *Hershey* itself was derived from *Mike v. Borough of Aliquippa*, 279 Pa.Super. 382, 421 A.2d 251 (1980) wherein this Court was not as absolute. In that case, we stated that "the lack of pre-existing animosity between the combatants *strongly suggests* that the motive for the attack was work-related and not because of reasons personal to the assailant." *Id.* at 255 (emphasis added). We have reiterated this proposition in recent cases. *See, e.g., Hammerstein v. Lindsay*, 440 Pa.Super. 350, 356–58, 655 A.2d 597, 601 (1995); *Abbott v. Anchor Glass Container Corp.*, 758 A.2d 1219, 1224 (Pa.Super.2000). Thus, we conclude that our cases assert only a strong presumption that an attack is work-related where there is no showing of personal animus.

¶ 18 Finally, this Court, despite primarily focusing on the presence of personal animosity, has suggested that the exception is somewhat broader. For example, in *Vosburg v. Connolly*, 405 Pa.Super. 121, 591 A.2d 1128 (1991), the owner of an excavation business confronted one of his employees at a jobsite following the day's shift concerning a conversation the employee had with the client. *Id.* at 1129. The exchange escalated to a fight and the employee was injured severely. *Id.* This Court concluded that personal animosity did not lead to the attack, that the fight was a direct result of the day's excavation work and, therefore, the exception did not apply. However, we emphasized: "As the assault was not for reasons *personal* to Appellant, but rather was connected with Appellant's *employment*, the 'third party attack' exception is inapplicable." *Id.* at 1132 (emphasis in original).

⬛ ¶ 19 Also, in *Schweitzer v. Rockwell Int'l*, 402 Pa.Super. 34, 586 A.2d 383 (1990), we held that an employee's suit against her employer for sexual harassment by her supervisor was not barred by the WCA. We concluded that the harassment was "*personal in nature* and not part of the proper employer/employee relationship." *Id.* at 391 (emphasis added). Therefore, in light of *Kohler, supra*, and for all the reasons stated above, we conclude that a showing of personal animus is not strictly required to implicate the third party attack exception. What is required is a showing that the victim was attacked for purely personal reasons unrelated to employment.[5] We emphasize that a pre-

---

**4.** Indeed, the Court states that the exception is only "loosely" called the "personal animus exception." *Kohler*, 532 Pa. at 136, 615 A.2d at 30.

**5.** The Commonwealth Court has reached the same conclusion:

> We note that no hostile relationship between Claimant and Hill existed prior to the assault; indeed, the two had never met before. Therefore, we cannot agree with Employer's characterization of the attack as one based on personal animosity between the parties. However, we do not believe

> that the Act requires Employer to establish such animosity. Although we recognize that the provision at issue is sometimes referred to as the "personal animus" exception to the Act, *see Hammerstein v. Lindsay*, 440 Pa. Superior Ct. 350, 655 A.2d 597 (1995), we point out that the provision itself never uses the term "animus" or its equivalent, but, rather, excludes injuries intentionally inflicted by a third party for personal reasons unassociated with the victim's employment.

sumption nonetheless remains that an attack *is* work-related when, as here, it occurs on the employer's premises, and that the lack of previous personal animus strongly indicates a work-related cause.

¶ 20 With this standard in mind, and considering the evidence in the light most favorable to Krasevic as the verdict winner, we find that the record supports the conclusion that she was attacked by Stern for purely personal reasons not related to employment. The evidence presented at trial does not reveal that any work-related disputes between Krasevic and Stern gave rise to the attack. Indeed, Stern testified that the attack had nothing to do with work. (N.T., 4/29/99, at 156.) Further, the attack was not an isolated occurrence: Stern testified that the day before the attack he had followed Krasevic into the bathroom and kissed her; Krasevic testified that he had previously touched her breasts. The attack occurred while Krasevic was on break, while she was in the bathroom. She was not at her work station and was not performing a work-related task. In fact, the substance of the attack itself—a rape—cannot by any stretch of the imagination be considered a work-related occurrence. *Cf. Schweitzer v. Rockwell Int'l*, 402 Pa.Super. 34, 586 A.2d 383 (1990) (claims against employer regarding sexual harassment by co-worker not barred by the WCA as the harassment was "personal in nature and not part of the proper employer/employee relationship"). There was no suggestion that Krasevic was attacked because of her position at Goodwill or that Stern would have attacked anyone who had been in the bathroom that day. *Cf. Hershey, supra* (third party attack exception inapplicable where victim was unable to refute assumption that her attacker would have assaulted any female employee manning her station on

night of attack). Indeed, our review of the record leads us to the conclusion, consistent with the trial court, that Stern had developed a personal fixation on Krasevic and that the bathroom at Goodwill was merely a convenient location to carry out an attack.

¶ 21 Further, this is not a case where the nature of the attack itself suggests that the incident was work-related. *See, e.g., Abbott v. Anchor Glass Container Corp.*, 758 A.2d 1219 (Pa.Super.2000) (third party attack exception did not apply because employee, who following disciplinary meeting and suspension returned to work with a gun and killed his supervisor and several other supervisory personnel, was clearly acting for work-related reasons given that he targeted only supervisory personnel). By contrast, as we stressed above, we believe quite the opposite is true: that the nature of a rape strongly suggests that the attack was personal and not related to work. *Cf. Schweitzer, supra*.

¶ 22 In light of the nature of the attack, that Stern had previously assaulted/molested Krasevic, and that Stern conceded that the attack was not work-related, we conclude that Krasevic presented sufficient evidence to overcome the presumption that the attack was work-related and, instead, demonstrated that it derived from purely personal reasons. Therefore we affirm the trial court's rejection of JNOV on these grounds.

¶ 23 Goodwill next asserts that the trial court erred in denying its motion for a new trial because the court failed to instruct the jury that it must find that Stern had personal animus towards Krasevic. In light of our conclusion above that a showing of personal animus is not

*Bachman Co. v. Workmen's Compensation Appeal Board (Spence)*, 683 A.2d 1305, 1310 n. 15 (Pa.Cmwlth.1996); *see also Motion Control Indus. v. Workmen's Compensation Appeal Board (Buck)*, 145 Pa.Cmwlth. 399, 603 A.2d 675, 679 (1992) (rejecting application of third party attack exception where there was not substantial evidence that the victim's death "was caused by the intentional act of a third person acting out of personal motivation directed at the decedent.")

absolutely required, we must reject this contention.

■ ¶ 24 We review Goodwill's challenge to the jury instruction "to determine if the trial court abused its discretion or committed an error of law. We will not grant a new trial because of an erroneous jury instruction unless the jury charge in its entirety was unclear, inadequate, or tended to mislead or confuse the jury." *Fragale v. Brigham*, 741 A.2d 788, 790 (Pa.Super.1999), *appeal denied*, 563 Pa. 629, 758 A.2d 662 (2000). Further, "a trial judge has wide latitude in his or her choice of language when charging a jury, provided always that the court fully and adequately conveys the applicable law." *Wilson v. Anderson*, 420 Pa.Super. 169, 172–74, 616 A.2d 34, 36 (1992).

¶ 25 The trial court gave the following instructions to the jury concerning the issue of the exclusivity of the WCA and the third party attack exception:

You have heard some discussion in the course of these proceedings about whether or not this is a workmen's compensation case and there has been some explanation offered to you of the nature of workmen's compensation cases. We agree with the explanation that if a person is injured on the job and the injury grows out of a work related dispute, then workmen's compensation would be the process that the Plaintiff would follow in order to recover any injuries that they have sustained and the law requires that they pursue that remedy by way of workmen's compensation but the law also permits a person to bring a lawsuit such as the case we are involved in here if they can show that the injury about which they are complaining is not work related and doesn't serve the purpose of the employer but is completely independent of any work relationship.

The allegation here and the evidence has indicated that there was a rape. You determine whether or not that was work related in terms of the occurrence or whether or not Durell was serving his own purpose in being involved in this matter. If you find that it is work related, then the case is over because the Plaintiff would be required to pursue the matter by means of the workmen's compensation claim.

You have heard the father testify that there has been no workmen's compensation claim filed in this case and it's their position that this is a case outside of the workmen's compensation requirement and, therefore, they brought this matter before you in order to have you decide whether or not you are satisfied that this is a case outside of the workmen's compensation provision and that some duty to Sherri has been violated that resulted in the injuries about which she complains.

It is not a very complicated matter but these are the considerations that you have to entertain in order to discharge your responsibility and we explained to you at the outset that ultimately you will tell us how the case is resolved. That is the nature of the responsibility of a juror, a fact finder. You ultimately will tell us as a result of your deliberation how this matter should be resolved based on how you resolve the question of whether or not this was a matter that was in furtherance of the employer's interest. If you decide it wasn't, that it was an appropriate matter for a lawsuit, then you tell us whether or not there was a duty owed to Sherri, whether or not that duty was violated, and whether or not the injury about which she complains resulted from the violation of that duty and there was a legal cause, a substantial factor in bringing about her injury.

(N.T., 4/29/99, at 34–36.)

¶ 26 Given our conclusion that a finding of personal animus is not strictly required, we believe these instructions accurately set forth the law; therefore, we must reject Goodwill's argument and affirm the

trial's court's denial of Goodwill's motion for a new trial on these grounds.

¶ 27 Goodwill's final contention is that the trial court erred by rejecting its proposed jury instruction on superceding cause. We find that a superceding cause instruction was not appropriate and, therefore, properly was rejected by the trial court.

¶ 28 A superceding cause is defined as "an act of a third person or other force which, by its intervention, prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." *Von der Heide v. Commonwealth, Dep't of Transportation*, 553 Pa. 120, 123, 718 A.2d 286, 288 (1998) (quoting Restatement (Second) of Torts § 440). Further, a superceding cause must be an act "which is so extraordinary as not to have been reasonably foreseeable." *Id.* Here, Goodwill argues that Stern's intentional act in raping Krasevic was a superceding cause of her harm, raising a jury question that justified a superceding cause instruction.

¶ 29 We disagree. Stern's act was precisely the type of conduct that made Goodwill's conduct (the failure to supervise the bathroom) negligent, and therefore Stern's act was not a superceding cause but rather the foreseeable and logical result of Goodwill's negligence. Section 449 of the Restatement (Second) of Torts specifically states:

§ 449. Tortious Or Criminal Acts the Probability of Which Makes Actor's Conduct Negligent

If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby.

Restatement (Second) of Torts § 449. *See also Glass v. Freeman*, 430 Pa. 21, 28, 240 A.2d 825, 829 (1968) (in negligence action against father, citing section 449 in rejecting argument that son's negligence in driving truck was superceding cause of harm where possibility of son's negligence is what made father's conduct in leaving truck unattended negligent); *Pushnik v. Winky's Drive In Restaurants*, 242 Pa.Super. 323, 332–34, 363 A.2d 1291, 1296 (1976) (in negligence action against restaurant, citing section 449 in rejecting contention that crash of automobile through front of restaurant was superceding cause of harm to patron, since likelihood that crash would occur was exactly what made restaurant's failure to protect against such crashes negligent). As no question concerning superceding cause existed for the jury, the trial court properly rejected Goodwill's proposed instruction on this point. *See Trude v. Martin*, 442 Pa.Super. 614, 630–32, 660 A.2d 626, 634 (1995).

¶ 30 For all of the forgoing reasons, we affirm the judgment entered by the trial court.

¶ 31 Judgment affirmed.