**Mirales CARDENAS and Albert Luecke, Appellants,**

v.

**Robert SCHOBER, Appellee.**

**Mirales Cardenas, Gudula Cardenas and Albert Luecke, Appellants,**

v.

**Robert Schober, Appellee.**

Superior Court of Pennsylvania.

Argued June 27, 2001.
Filed Aug. 30, 2001.

319

Lawrence Solomon, Philadelphia, for appellants.

James F. Mannion, King of Prussia, for appellee.

BEFORE: HUDOCK, STEVENS and POPOVICH, JJ.

POPOVICH, J.:

¶ 1 Two appeals are before this Court from the orders entered in the Court of Common Pleas of Montgomery County on September 14, 2000, and November 16, 2000, sustaining appellee's preliminary objections to appellants' amended complaints. Upon review, we affirm the order entered on November 16, 2000, and affirm in part and reverse in part the order entered on September 14, 2000.

¶ 2 The relevant facts and procedural history follow. This case involves a dispute regarding the will of Eleanor Harper, who died on September 24, 1997. Ms. Harper's will, dated March 20, 1997, was admitted to probate, and letters testamentary were issued to the executor, appellee, on October 2, 1997. Appellants claim appellee's actions in his dealings with Ms. Harper denied them inheritance money and personal property. They argue that

in July of 1997, Ms. Harper attempted to execute another will leaving appellants Mirales and Gudula Cardenas $80,000.00, and appellant Albert Luecke $60,000.00. They also allege Ms. Harper made handwritten documents leaving personal property to Mirales Cardenas and expected appellee to have these documents drawn up as a new will, and that appellee failed to do so or failed to do so properly. Appellants also allege that appellee hid and/or destroyed some of these documents, and, therefore, none of them could be probated. In the probated will, appellants Mirales and Gudula Cardenas were left $10,000.00, and Albert Luecke was left nothing. Appellee was left Ms. Harper's home and its contents, along with the residuary of her estate worth $1,500,000.00.

¶ 3 Appellants filed suit against appellee on May 4, 1998, docketed at No. 98–080605 ("*Cardenas I* "), alleging various claims including breach of contract, fraud, misrepresentation, promissory estoppel, conversion and undue influence in connection with appellee's handling of Ms. Harper's will. Appellants sought to have a constructive trust imposed as well as a resulting trust and punitive damages. On May 22, 1998, appellee filed preliminary objections to appellants' complaint.

¶ 4 On October 1, 1998, appellants also filed an appeal from probate in the Orphans' Court Division ("*Cardenas II* "), in Ms. Harper's Estate docketed at O.C. No. 97–2944, alleging that Ms. Harper executed another will in July of 1997, leaving bequests to appellants that were never included in the will of March 20, 1997. They alleged that this will was taken or destroyed by appellee. By order dated December 28, 1998, the civil complaint, *Cardenas I,* was transferred to the Orphans Court Division to be handled in conjunction with the will contest by Judge Stanley R. Ott. Appellants later conceded that they could not prevail on a will contest.

¶ 5 On February 8, 1999, the Orphans' Court dismissed the civil complaint, *Cardenas I.* On February 19, 1999, appellants filed a petition for reconsideration of the order dismissing the civil complaint. In the petition, they argued that if given the opportunity to amend the complaint, they would allege that there were other writings in addition to the will they claim was destroyed by appellee. They argued that these writings revealed Ms. Harper's testamentary wishes for appellants which were intended to constitute a will, but were not properly executed. On February 24, 1999, the court granted appellants leave to amend the complaint. An amended complaint in *Cardenas I* was filed on March 11, 1999. Appellee filed preliminary objections to the amended complaint on April 19, 2000, alleging failure to state a cause of action. The court heard oral arguments on the preliminary objections on July 6, 2000, and supplemental briefs were filed regarding a cause of action for intentional interference with inheritance.

¶ 6 In the interim, on June 9, 2000, appellants filed another suit in the civil division, docketed at 00–10967, ("*Cardenas III* ") which was assigned to Judge William T. Nicholas. On July 26, 2000, appellee filed preliminary objections in that action. On August 7, 2000, appellants filed an amended complaint and specifically alleged intentional interference with an inheritance. On August 11, 2000, appellee again filed preliminary objections.

¶ 7 On September 14, 2000, the lower court sustained appellee's preliminary objections in *Cardenas I,* dismissing the amended complaint with prejudice. The lower court stated the amended complaint did not state a claim for intentional interference with inheritance and that leave to amend a second time could not be granted

because the statute of limitations had expired. At the same time, the lower court dismissed the appeal from probate in *Cardenas II*.

¶ 8 On October 3, 2000, appellants filed an appeal from the dismissal of *Cardenas I* docketed at 2890 EDA 2000. On October 25, 2000, Judge Nicholas ordered that *Cardenas III* was to be reassigned to Judge Ott for disposition. On November 16, 2000, Judge Ott sustained appellee's preliminary objections and dismissed *Cardenas III* with prejudice citing the court's reasons set forth in the opinion and order dated September 14, 2000. On December 6, 2000, appellants filed an appeal from *Cardenas III* docketed at 3465 EDA 2000.

¶ 9 On January 23, 2001, appellee filed a motion with this Court to consolidate *Cardenas I* and *Cardenas III* (2890 EDA 2000 and 3465 EDA 2000). The motion was denied by this Court on February 7, 2001, and the prothonotary was directed to list these matters consecutively. Appellee now requests this Court to consolidate these appeals. We grant this request and will address both appeals herein.

¶ 10 In *Cardenas I*, appellants raise the following issues for our review:

1. Whether the Plaintiffs pleaded sufficient material facts in the Amended Complaint to support a claim that they were entitled to damages as third-party donee beneficiaries on a contract entered into by the Defendant and a third party which was breached by the Defendant?

2. Whether the Plaintiffs pleaded sufficient material facts in the Amended Complaint to support a claim that they were entitled to damages for

the Defendant's intentional or, in the alternative, negligent interference with an inheritance?

3. If the Plaintiffs' Amended Complaint did state a cause of action for intentional or negligent interference with an inheritance but had no specific Count so labeled, should they have been permitted to amend the Amended Complaint to add this theory labeled as a new Count if they did not have to add any new factual averments?

Appellants' brief, p.4.[1]

¶ 11 We note preliminarily our standard of review when addressing an appeal from a demurrer. Our standard of review for an order granting a preliminary objection in the nature of a demurrer is as follows: All material facts set forth in the pleading at issue as well as all inferences reasonably deductible therefrom are admitted as true. The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it. *CoreStates Bank, Nat'l Assn. v. Cutillo*, 723 A.2d 1053, 1057 (Pa.Super.1999) (citation omitted). When reviewing a grant of demurrer, we are bound neither by the inferences drawn by the trial court, nor by its conclusions of law. *Id.* at 1057. Our scope of review is plenary. *Id.*

¶ 12 A preliminary objection in the nature of a demurrer will be granted where the contested pleading is legally insufficient. *See* Pa.R.C.P. 1028(a)(4). "Preliminary objections in the nature of a demurrer require the court to resolve the

---

1. In *Cardenas III* appellants raised issues (1) and (2) noted above. We address *Cardenas III* following our consideration of *Cardenas I*.

issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer." *Williams v. Nationwide Mutual Ins. Co.,* 750 A.2d 881 (Pa.Super.2000) (citation omitted).

¶ 13 We now turn to appellants' first issue. Appellants argue sufficient material facts were pleaded in the amended complaint to support a claim that they were entitled to damages as third party donee beneficiaries. They argue a contract was entered into by appellee and Ms. Harper which was breached by appellee. In support of their argument, they claim documents, or testamentary writings, written by Ms. Harper reveal she wished for these documents to be executed as her will and appellee breached his contract with Ms. Harper by failing to execute these documents properly. They allege these documents prove Ms. Harper intended to bequeath substantially greater sums of money and gifts to appellants than indicated in her probated will and claim appellee intentionally failed to have these documents executed as a new will.

¶ 14 In *Gregg v. Lindsay,* 437 Pa.Super. 206, 649 A.2d 935 (1994), we explained the applicability of third party beneficiary theory with regard to estates and restated our Supreme Court's explanation of the two-part test used in determining whether one may claim third party beneficiary status. The two-part test is as follows:

(1) [T]he recognition of the beneficiary's right must be "appropriate to effectuate the intention of the parties," and (2) the performance must "satisfy an obligation of the promisee to pay money to the beneficiary" or "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." The first part of the test sets forth a standing requirement.

For any suit to be brought, the right to performance must be "appropriate to effectuate the intentions of the parties." This general condition restricts the application of the second part of the test, which defines the intended beneficiary as either a creditor beneficiary (§ 302(1)(a)) or a donee beneficiary (§ 302(1)(b)), though these terms are not themselves used by Restatement (Second). Section 302(2) defines all beneficiaries who are not intentional beneficiaries as incidental beneficiaries. The standing requirement leaves discretion with the trial court to determine whether recognition of third party beneficiary status would be "appropriate." If the two steps of the test are met, the beneficiary is an intended beneficiary "unless otherwise agreed between promisor and promisee."

Applying these general considerations and Restatement (Second) § 302 to the case of beneficiaries under a will, the following analysis emerges. The underlying contract is that between the testator and the attorney for the drafting of a will. The will, providing for one or more named beneficiaries, clearly manifests the intent of the testator to benefit the legatee. Under Restatement (Second) § 302(1), the recognition of the "right to performance in the beneficiary" would be "appropriate to effectuate the intention of the parties" since the estate either cannot or will not bring suit. Since only named beneficiaries can bring suit, they meet the first step standing requirement of § 302. Being named beneficiaries of the will, the legatees are intended, rather than incidental, beneficiaries who would be § 302(1)(b) beneficiaries for whom "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." In the case of a testator-attorney contract, the attorney

is the promisor, promising to draft a will which carries out the testator's intention to benefit the legatees. The testator is the promisee, who intends that the named beneficiaries have the benefit of the attorney's promised performance. The circumstances which clearly indicate the testator's intent to benefit a named legatee are his arrangements with the attorney and the text of his will.

*Id.* (citing *Guy v. Liederbach,* 501 Pa. 47, 459 A.2d 744 (1983)).

¶ 15 Our Supreme Court in *Guy, supra,* stated that a properly restricted cause of action for third party beneficiaries in accord with the principles of Restatement (Second) of Contracts § 302 (1979) should be available to named legatees who would otherwise have no recourse for failed legacies which result from attorney malpractice. The Supreme Court stated a named legatee of a will may bring suit as an intended third party beneficiary of the contract between the attorney and the testator for the drafting of a will which specifically names the legatee as a recipient of all or part of the estate. The Court also indicated that granting standing to a narrow class of third party beneficiaries seemed "appropriate" under Restatement (Second) of Contracts § 302 where the intent to benefit is clear and the promisee (testator) is unable to enforce the contract.

¶ 16 In *Gregg,* we noted the emphasis our Supreme Court placed on the types of cases involved when it created a right of recovery for third party beneficiaries. We stated that it limited recovery to a very narrow class in which it was clear that an innocent party had been injured by legal malpractice in the execution of an "otherwise valid will." *Gregg, supra.* Also, we indicated under the third party beneficiary theory, the fact that the obligor knows that his services will benefit a third person is not alone sufficient to vest in such third

person the rights of a third person beneficiary. *Id.* (citation omitted).

¶ 17 After reviewing appellants' claim with these principles in mind, we conclude appellants do not fall within the narrow class of legatees that may bring suit under the third party beneficiary theory. First, as appellants admit, the documents, or testamentary writings, written by Ms. Harper do not constitute an "otherwise valid will." *Gregg, supra.* In *Guy,* our Supreme Court indicated third party beneficiary status was appropriate for the plaintiff because in that case, the attorney who drafted the will directed the plaintiff to be a subscribing witness which voided her legacy. However, the will was an otherwise legally valid will in that it was executed by the decedent with due formalities and clearly set forth the decedent's intent to benefit the named legatees. The Court reasoned that the plaintiff, a legatee, should not be precluded from recovering against the attorney because of a lack of privity between the legatee and attorney.

¶ 18 Here, there is no question that the documents written by Ms. Harper, which evince her intent to give appellants more than that which was indicated in her probated will, do not constitute an "otherwise valid will." Appellants admit, and there is no doubt, these documents lack the requisite formalities prescribed for the execution of a valid will. *See* 20 Pa.C.S.A. § 2502. Appellants contend these documents were to be transformed into a legally valid will by appellee. This is insufficient to meet the requirement that there must be an otherwise valid will. Consequently, appellants may not use them to claim third party beneficiary status.

¶ 19 Next, our Supreme Court in *Guy* noted that it should not eliminate the privity requirement in malpractice actions based on negligence. As a result, the

Court retained the requirement that there must be an attorney-client relationship or a specific undertaking for professional services in malpractice actions. *Guy,* 459 A.2d at 747. In accordance with that requirement, the court carved out a narrow class of persons permitted to recover as third party beneficiaries in actions involving wills where privity is between the testator and attorney or those similarly situated. *Id.*

¶ 20 Appellants do not fall within the narrow class of legatees permitted to pursue actions as third party beneficiaries. Our Supreme Court indicated actions permitted under this theory were intended in cases where legal malpractice was the harm to be remedied. *Guy, supra.* The Court clearly did not dispense with the requirement that there must be either an attorney-client relationship or another similar professional relationship between testator and the drafter of the will under the third party beneficiary theory. Appellee is not an attorney, and appellants have not indicated what, if any, similar type of professional relationship existed between Ms. Harper and appellee that would suffice as a substitute for the attorney-client relationship. Consequently, we find appellants may not proceed as third party beneficiaries because the relationship between appellee and Ms. Harper does not fall within the exception to the privity requirement and legal malpractice is not the harm to be remedied.

¶ 21 Therefore, because the documents authored by Ms. Harper do not constitute an otherwise legally valid will, and appellee was not an attorney or acting in a similar professional capacity, appellants cannot recover as third party beneficiaries. For these reasons, we find appellee's pre-

liminary objections to this cause of action were properly sustained.

¶ 22 Next, we consider appellants' second issue in which they argue sufficient material facts were pleaded in their amended complaint to support that they were entitled to damages for appellee's intentional, or in the alternative, negligent interference with an inheritance. Appellants admit they did not specifically include a separate count alleging intentional interference with an inheritance.[2]

¶ 23 Several of Pennsylvania's Rules of Civil Procedure are implicated here. First, Pennsylvania Rule of Civil Procedure 1020(d)(1) and (4) provide:

> (d)(1) If a transaction or occurrence gives rise to more than one cause of action against the same person, including causes of action in the alternative, they shall be joined in separate counts in the action against any such person.
>
> \* \* \*
>
> (4) Failure to join a cause of action as required by subdivision (d)(1) of this Rule shall be deemed a waiver of that cause of action as against all parties to the action.

Pa.R.Civ.P. 1020(d)(1) and (4). Rule 1020(d)(1) requires a plaintiff to join in one action all causes of action which arise from the same transaction or occurrence, regardless of the nature of the claim. Failure to join a cause of action as required by Rule 1020(d)(1) results in waiver of that claim. *Hineline v. Stroudsburg Electric Supply Co.,* 402 Pa.Super. 178, 586 A.2d 455 (1991) (citation omitted).

¶ 24 Further, Pennsylvania Rule of Civil Procedure 1019(a) provides "[t]he material facts on which a cause of action or

---

**2.** We know of no cause of action for negligent interference with an inheritance or gift. The Restatement of Torts (Second) § 774B states a cause of action for intentional interference with an inheritance or gift.

defense is based shall be stated in a concise and summary form." This rule has been construed to mean that the complaint must not only apprise the defendant of the claim being asserted, but it must also summarize the essential facts to support the claim. *Dickerson v. Brind Truck Leasing*, 362 Pa.Super. 341, 524 A.2d 908, 910 (1987) (citations omitted). As noted, appellants did not specifically allege intentional interference with an inheritance or gift. However, this omission is not fatal to their claim.

¶ 25 We have held that it is not necessary that the plaintiff identify the specific legal theory underlying the complaint. *Burnside v. Abbott Laboratories*, 351 Pa.Super. 264, 505 A.2d 973, 980 (1985), *Weiss v. Equibank*, 313 Pa.Super. 446, 460 A.2d 271, 275 (1983). Rather, it is the duty of the court to discover from the facts alleged in a complaint the cause of action, if any, stated therein. *Burnside*, 505 A.2d at 980, *see also Bartanus v. Lis*, 332 Pa.Super. 48, 480 A.2d 1178, 1180 (1984). Further, we recognize the proposition that the Rules of Civil Procedure are to be liberally interpreted. *See*, Pa.R.C.P. 126.

¶ 26 Therefore, we must consider whether the facts alleged in the amended complaint support a cause of action for intentional interference with an inheritance. Our courts have rarely had occasion to address this cause of action. In *Marshall v. DeHaven*, 209 Pa. 187, 58 A. 141 (1904), our Supreme Court, in affirming the demurrer of the lower court, alluded to the elements of the tort in finding the plaintiff did not aver sufficient facts to support a cause of action for intentional interference with an inheritance. The Court stated:

> There is here no averment that Faddis was to, or did, use any fraud, misrepresentation or undue influence; that he was successful in preventing any change; that but for him the testator would have changed his will, or that if the testator had done so what he would have given to the plaintiff. It may have been very unhandsome conduct on the part of defendant, but the [Plaintiff's] statement wholly fails to show any tort redressible at law.

*Id.* at 189, 58 A. 141. A cause of action for intentional interference with an inheritance was also alluded to in *Mangold v. Neuman*, 371 Pa. 496, 91 A.2d 904 (1952), *see also Cole v. Wells*, 406 Pa. 81, 177 A.2d 77 (1962). The Restatement (Second) of Torts later defined intentional interference with an inheritance or gift as follows:

> § 744B Intentional Interference with Inheritance or Gift.
>
> One who, by fraud or duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he otherwise would have received is subject to liability to the other for the loss of the inheritance or gift.

Eleven states have adopted Section 744B of the Restatements (Second). *DeWitt v. Duce*, 408 S.2d 216 (Fla.1981); *Nemeth v. Banhalmi*, 99 Ill.App.3d 493, 55 Ill.Dec. 14, 425 N.E.2d 1187 (1981); *Minton v. Sackett*, 671 N.E.2d 160 (Ind.App.1996); *Huffey v. Lea*, 491 N.W.2d 518 (Iowa 1992); *Plimpton v. Gerrard*, 668 A.2d 882 (Me. 1995); *Estate of Doyle v. Doyle*, 177 Mich. App. 546, 442 N.W.2d 642 (1989); *Hammons v. Eisert*, 745 S.W.2d 253 (Mo.App. 1988); *Doughty v. Morris*, 117 N.M. 284, 871 P.2d 380 (App.1994); *King v. Acker*, 725 S.W.2d 750 (Tex.App.1987); *Harris v. Kritzik*, 166 Wis.2d 689, 480 N.W.2d 514 (App.1992). Additionally, like Pennsylvania, four other states permit an action for intentional interference with an inheritance, but have not expressly adopted the Restatement of Torts (Second) § 774B.

*See McNeil v. Jordan,* 20 Fiduc.Rep.2d 295 (Montg.C.C.P.2000). In *Marshall v. DeHaven, supra,* our Supreme Court indicated the elements of the tort as follows:

(1) The testator indicated an intent to change his will to provide a described benefit for plaintiff,

(2) The defendant used fraud, misrepresentation or undue influence to prevent execution of the intended will,

(3) The defendant was successful in preventing the execution of a new will; and

(4) But for the Defendant's conduct, the testator would have changed his will.

*Id., see also, McNeil, supra.*

¶ 27 Keeping these elements in mind, we first consider whether appellants alleged sufficient facts in their amended complaint to support their claim that Ms. Harper indicated an intent to change her will to provide a described benefit for appellants. Appellants averred in their amended complaint that subsequent to the execution of Ms. Harper's will which was eventually probated, Ms. Harper attempted to execute another will or codicil leaving appellants Mirales and Gudula Cardenas the sum of $80,000.00, and appellant Albert Luecke the sum of $60,000.00. They allege they can prove Ms. Harper also authored various other documents expressing her desire to make testamentary dispositions to appellants. They claim she intended these documents to be effective as a new will or to be appended to her will and considered part of it. *See* appellants' amended complaint, ¶¶ 6–9, ¶ 14. We conclude these factual allegations support the claim that Ms. Harper indicated an intent to change her will to provide a described benefit for appellants.

¶ 28 Next, we consider whether appellants alleged sufficient facts to support the assertion that appellee used fraud, misrepresentation or undue influence to prevent

the execution of a new will. Fraud is defined in Black's Law Dictionary as: "A tort arising from a knowing misrepresentation, concealment of material fact, or reckless misrepresentation made to induce another to act to his or her detriment." *See* Black's Law Dictionary, Seventh Edition.

¶ 29 Appellants alleged they could prove the following facts to support this element. Appellants aver that Ms. Harper and appellee entered into an agreement wherein appellee agreed to have her will drawn up as per her wishes, to advise her as to her financial affairs and to do whatever was necessary to carry out her testamentary desires. They also aver that Ms. Harper directed appellee to arrange to have subsequent wills drawn up, that he was compensated for doing so, and that he intentionally failed to do so to benefit himself. Appellants allege the detriment to Ms. Harper was that these wishes were not carried out because none of the writings referred to in their amended complaint constituted a will under the law. *See* appellants' amended complaint, ¶ 10, ¶¶ 16–22. These factual allegations are sufficient to support their claim that appellee used fraud to prevent the execution of a new will.

¶ 30 Finally, we consider whether appellants alleged sufficient facts to support their claim that appellee was successful in preventing the execution of the new will and whether but for appellee's conduct, Ms. Harper would have changed her will. Appellants aver they can prove writings existed showing Ms. Harper intended to change her will with regard to sums of money left to appellants, that appellee confiscated or destroyed writings indicating her intent, that other documents exist indicating Ms. Harper's wish to leave personal property to appellant Mirales Cardenas,

and that appellee intentionally failed to have these documents drawn up as wills. *See* appellants' amended complaint, ¶¶ 10,-a,b,c, ¶¶ 16–22. These factual allegations are sufficient to support that appellee was successful in preventing the execution of the new will and that but for appellee's conduct, Ms. Harper would have changed her will.

¶ 31 Thus, we conclude that, applying our standard of review, if all material facts set forth in the amended complaint as well as all inferences reasonably deductible therefrom are admitted as true, the law does not say with certainty that no recovery is possible. *CoreStates Bank, Nat'l Assn., supra.* Rather, we find appellants' factual averments may establish a cause of action for intentional interference with an inheritance. We reiterate that where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it. Therefore, we conclude that although appellants' factual allegations may ultimately be difficult to prove, the lower court's dismissal of appellants' amended complaint for failure to state a cause of action for intentional interference with an inheritance was premature.[3]

 ¶ 32 We now turn briefly to the appeal in *Cardenas III.* We find that *lis pendens* applies to bar the continuation of this action. In order to find *lis pendens* a valid objection to the immediate entertainment or continuation of a suit, the objecting party must demonstrate to the court that in each case "the parties are the same, and the rights asserted and the relief prayed for are the same." *Virginia Mansions Condominium Assoc. v. Lampl,* 380 Pa.Super. 452, 552 A.2d 275 (1988)

(citations omitted). Generally, the pendency of a prior action, or *lis pendens,* may be pleaded either as a preliminary objection, Pa.R.C.P. 1017(b)(5), or in the answer, Goodrich–Amram 2d § 1017(b):3 & 13. *Id.* The party raising the defense of *lis pendens* can ask that the action in which the defense is being raised be abated, stayed pending the outcome of the prior litigation, or that the actions be consolidated. *Id.*

 ¶ 33 Here, appellee raised the defense of *lis pendens* in his preliminary objections. The lower court did not sustain his preliminary objections based on this defense and instead relied on the reasons noted in its opinion and order dismissing the first suit. We find *lis pendens* applies to bar appellants' second law suit. All of the elements of *lis pendens* are met. The parties initiating the second suit are also parties in the first suit. The plaintiffs in the first suit, *Cardenas, I,* are Mirales Cardenas, Gudula Cardenas, and Albert Luecke. The plaintiffs in the second suit at issue here, *Cardenas III,* are Mirales Cardenas and Albert Luecke. We find that the defense of *lis pendens* is not barred simply because there are fewer plaintiffs in the second suit. Further, the causes of action and type of relief requested are the same. In the both cases, appellants brought claims for breach of contract, fraud, misrepresentation, promissory estoppel, conversion and undue influence. The only difference is that in the second suit, appellants also asserted a claim for intentional interference with an inheritance, which we have found to exist pursuant to the factual allegations in the first suit. Finally, the type of relief sought is the same. Appellants seek damages, im-

---

**3.** Having determined that the dismissal of appellants' amended complaint was error, we need not address appellants' third issue regarding whether it was also error for the lower court to dismiss the complaint with prejudice, disallowing appellants leave to amend.

position of a constructive trust, a resulting trust and punitive damages. We find that the fact appellants ask for less money in the amount of damages in this suit does not preclude application of the doctrine. Consequently, we affirm the dismissal of *Cardenas III*.

¶ 34 At 3465 EDA 2000, we affirm. At 2890 EDA 2000, we affirm in part and reverse in part. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.