J-A25033-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JENNIFER KOHUT, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF JOHN HAUSER, JACQUELINE DAVISSON, JOSEPH HAUSER AND, CHRISTOPHER HAUSER | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : | |
| v. | : : | |
| | : | No. 355 WDA 2022 |
| | : | |
| DARLENE VLAHOS, ESQ., AND VLAHOS LAW FIRM, P.C. | : : : : | |

Appeal from the Order Entered March 14, 2022
In the Court of Common Pleas of Erie County Civil Division at No(s):  No. 11774-21

BEFORE:  KUNSELMAN, J., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:　　　　**FILED: NOVEMBER 29, 2022**

Jennifer Kohut, individually and as executrix of the Estate of John Hauser (Estate), Jacqueline Davisson, Joseph Hauser, and Christopher Hauser (collectively Heirs) appeal from the order entered in the Erie County Court of Common Pleas, sustaining the preliminary objections filed by Darlene Vlahos, Esquire (Attorney Vlahos) and Vlahos Law Firm, P.C. (collectively Law Firm) and dismissing Heirs' legal malpractice action because Heirs had no standing to sue Law Firm as third-party beneficiaries of Attorney Vlahos's legal services contract with John Hauser (Decedent).   On appeal, Heirs contend that the trial court erred as a matter of law in sustaining the demurrer to their complaint because (1) as named legatees in Decedent's probated will, they

had standing to sue Law Firm as third-party beneficiaries; (2) the decision in
*Estate of Agnew v. Ross*, 152 A.3d 247 (Pa. 2017), is distinguishable; and
(3) their amended complaint sufficiently pled a cause of action asserting Law
Firm's negligence.  For the reasons below, we affirm.

The relevant facts underlying this appeal, as set forth in Heirs' amended
complaint, are as follows.  In April of 2014, Decedent executed a will (2014
Will), which was prepared by Attorney Vlahos.  **See** Heirs' Amended
Complaint, 11/8/21, at ¶¶ 10-12.  Because Decedent's wife passed away a
month earlier, the 2014 Will "provided for equal distributions of the residue of
his estate to each of his four children as well as an unfunded trust for his
grandchildren, Christopher and Breanna Hauser." *Id.* at ¶ 12.  Heirs are three
of his adult children and his grandson, Christopher.[1]

In July of 2018, Decedent and his then-fiancée, Rebecca Kistle (Becky),
met with Attorney Vlahos to discuss revisions to his will, as well as the drafting
of a will for Becky, due to their upcoming nuptials in October of 2018.  Heirs'
Amended Complaint at ¶¶ 15-16.  Heirs allege that Decedent and Becky
agreed to the following:

> [I]n the event of their deaths [they would] bequeath only the
> marital home, household goods and equipment to one another and
> [would] bequeath the residue of their estates to their adult
> children from their first marriages.  [They] also agree that a fund

---

[1] One of Decedent's adult children, John W. Hauser, died prior to 2018. **See**
Heirs' Amended Complaint at Exhibit C, Vlahos File Note, 7/17/18 (Vlahos File
Note), at 2.  His portion of the estate passed to his surviving daughter,
Breanna. *Id.*  She is not a party to this lawsuit.

or special needs trust would be set up and funded from [D]ecedent's assets for the benefit of [his] grandson[, Christopher,] who is autistic and disabled.

*Id.* at ¶ 1.  Attorney Vlahos agreed to represent both Decedent and Becky. *Id.* at ¶ 20.

Attorney Vlahos "memorialized" the proposed provisions of the respective wills in a "File Note" dated July 17, 2018.  Heirs' Amended Complaint at ¶ 22; *see also* Vlahos File Note.  Pursuant to the couple's agreement, Decedent's revised will was to "contain a provision that [he] is married to [Becky], and . . . made provisions for his wife Becky outside the will and has not made any provisions for the residue of the estate to Becky." Heirs' Amended Complaint at ¶ 24; Vlahos File Note at 1-2.  Heirs allege that Attorney Vlahos failed to advise Decedent that this proposed language was inadequate to ensure that the entire residue of his estate would pass to Heirs, and that, to effectuate his wishes, he and Becky would have had to execute a separate pre- or postnuptial agreement.[2]  *Id.* at ¶¶ 25-26.

---

[2] Pursuant to Section 2203(a) of the Probate, Estates and Fiduciaries (PEF) Code, a surviving spouse has "a right to an elective share of one-third" of their deceased spouse's estate regardless of the provisions of the decedent's will. *See* 20 Pa.C.S. 2203(a).  However, this "right of election . . . may be waived, wholly or partially, before or after marriage or before or after the death of the decedent."  20 Pa.C.S. § 2207.  Relevant herein, Section 2507 further provides:

> **If the testator marries after making a will**, the surviving spouse shall receive the share of the estate to which he would have been entitled had the testator died intestate, unless the will shall give him a greater share or unless it appears from the will

*(Footnote Continued Next Page)*

Decedent and Becky were married on October 13, 2018. Heirs' Amended Complaint at ¶ 36. Heirs assert that "[o]n multiple occasions both prior to and after the wedding, [D]ecedent placed phone calls to [Attorney] Vlahos offering to come to her office to sign his revised will or requesting that she send the will to him for execution." *Id.* at ¶ 38. Heirs attached to their amended complaint a November 30, 2018, email exchange between Attorney Vlahos and a coworker in her office. The coworker informed Attorney Vlahos that Decedent and Becky were married in October and "they want to sign their Wills." *See* Heirs' Amended Complaint at Exhibit D, Email Exchange, 11/30/18. Attorney Vlahos responded by asking her coworker to call Decedent and "let him know that we will send out the drafts for them to review." *Id.*

_____

that the will was made in contemplation of marriage to the surviving spouse.

20 Pa.C.S. § 2507(3) (emphasis added). Under the intestacy provisions, "[i]f there are surviving issue of the decedent one or more of whom are not issue of the surviving spouse, [the surviving spouse is entitled to] **one-half** of the intestate estate." 20 Pa.C.S. § 2102(4) (emphasis added).

Accordingly, unless Decedent and Becky executed a separate agreement, Becky was entitled to a one-third elective share of Decedent's Estate even if the proposed will had been executed. *See* 20 Pa.C.S. §§ 2203(a), 2207. Here, however, because Decedent's 2014 Will was not revised prior to his marriage or death, Becky was entitled to elect a one-half share of the Estate, which she ultimately did. Therefore, Heirs also allege that "[t]he potential operation of [Section] 2203 created a conflict of interest between the concurrent representation of [Decedent] and Becky in their estate planning." Heirs' Amended Complaint at ¶ 27.

Attorney Vlahos failed to "timely prepare and forward[ the] documents" prior to Decedent's death five weeks later, on January 4, 2019. *Id.* at ¶ 54.

Consequently, Decedent's 2014 Will was probated, as it was the only will finalized before his death. *See* Heirs' Amended Complaint at ¶ 48. Because it was drafted prior to his engagement and marriage to Becky,

> [the] will was probated pursuant to 20 Pa.C.S. [§] 2102 which provided Becky was to receive 50% of the residue of the estate while the three surviving children and one surviving grandchild each received 12.5% of the residue of the estate.[3] Christopher Hauser did not receive any distributive share because the 2014 Will did not fund the trust that was intended for him.

*Id.* Heirs aver that, as a result of Attorney Vlahos's negligence, their "distributive shares" were reduced by nearly $700,000. *Id.* at ¶ 59.

On August 16, 2021, Heirs filed a civil complaint against Law Firm, asserting causes of action for negligence-based and contract-based legal malpractice. Law Firm filed preliminary objections on November 29, 2021. Law Firm argued: (1) Heirs cannot establish a negligence action because "[t]he individual beneficiaries had no attorney-client relationship" with Law Firm; and (2) as "purported beneficiaries of an unexecuted estate planning document[, Heirs had] no standing" to assert a breach of contract claim as third-party beneficiaries under *Agnew*.[4] Law Firm's Preliminary Objections to

---

[3] As noted *supra*, Decedent's predeceased son's share of the estate passed to his surviving daughter, Breanna.

[4] Law Firm also objected to the allegations in the amended complaint regarding Becky's estate planning as "impertinent matter." *See* Law Firm's Preliminary Objections to Amended Complaint, 11/29/21, at 4.

Amended Complaint, 11/29/21, at 2-3. Heirs filed an answer to Law Firm's preliminary objections on December 23, 2021, and Law Firm subsequently filed a reply brief in support of their preliminary objections.

The trial court conducted oral argument on March 3, 2022. Thereafter, on March 14th, the court entered an order sustaining Law Firm's preliminary objections and dismissing Heirs' complaint with prejudice "consistent with" **Agnew**. Order, 3/14/22. This timely appeal followed.[5]

Heirs present the following issues for our review:

1. Did the trial court err as a matter of law in sustaining a demurrer to this legal malpractice case where [Heirs], who are named legatees in the probated Will, state a cause of action as third[-]party beneficiaries of the contract for legal services under the Restatement (Second) of Contract § 302, adopted by **Guy v. Liederbach**, 459 A.2d 744 (Pa. 1983)?

2. Did the trial court err as a matter of law in dismissing this case at the preliminary objection stage for lack of standing and failing to distinguish the facts of this case from [**Agnew**]?

3. Did the trial court err as a matter of law in dismissing the negligence count for failure to state a cause of action where the facts averred in the Amended Complaint plead a specific undertaking by the lawyer to perform services for the benefit of [H]eirs?

Heirs' Brief at 5-6.

_____

[5] Heirs complied with the trial court's order to file a timely Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and the trial court subsequently filed a responsive opinion on May 26, 2022. Although Heirs' concise statement asserts 12 allegations of error, they present only three issues in their brief. **See** Heirs' Concise Statement of Errors Complained of on Appeal, 4/13/22, at 1-4. To the extent that their Rule 1925(b) statement raises any claims not included in their brief, they are abandoned on appeal.

When reviewing an order sustaining preliminary objections, we are guided by the following:

> Our standard of review of an order . . . is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.
>
> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Fiedler v. Spencer*, 231 A.3d 831, 835–36 (Pa. Super. 2020) (citation omitted), *appeal denied*, 241 A.3d 335 (Pa. 2020).

In the present case, Heirs assert a claim for legal malpractice. "[A]n action for legal malpractice may be brought in ether contract or tort." *Wachovia Bank, N.A. v. Ferretti*, 935 A.2d 565, 570 (Pa. Super. 2007) (citation omitted).

> The elements of a legal malpractice action, sounding in negligence, include: (1) employment of the attorney or other basis for a duty; (2) failure of the attorney to exercise ordinary skill and knowledge; and (3) that such failure was the proximate cause of the harm to the plaintiff. With regard to a breach of contract claim, an attorney who agrees for a fee to represent a client is by implication agreeing to provide that client with professional services consistent with those expected of the profession at large.

*Id.* at 570–71 (citations & quotation marks omitted).

Where, as here, the plaintiffs did not employ the allegedly negligent attorney, their legal malpractice claim is limited. Both the parties and the trial court agree the Pennsylvania Supreme Court decisions in *Guy v. Liederbach*, *supra*, and *Estate of Agnew v. Ross*, *supra*, provide the framework for malpractice claims brought against the drafter of the will by a beneficiary of the will based upon a failed legacy. Accordingly, a preliminary review of those decisions will be instructive.

In *Guy*, the Pennsylvania Supreme Court framed the issue before it as follows:

> [W]hether a named beneficiary of a will who is also named executrix has a cause of action against the attorney who drafted the will and directed her to witness it where the fact that she witnessed the will voided her entire legacy and her appointment as executrix.

*Guy*, 459 A.2d at 746.

In that case, the decedent, a Pennsylvania resident, employed the attorney to draft a will naming Frances Guy as executrix and primary beneficiary of the residual estate. *Guy*, 459 A.2d at 747. At the attorney's direction, Guy signed the will as a witness. *Id.* When the decedent died 15 years later while residing in New Jersey, Guy qualified as executrix of the decedent's estate, but, pursuant to a later invalidated New Jersey law, she was barred from taking her share of the estate because she was a "subscribing witness to the will." *Id.* (footnote omitted). Thus, Guy filed a legal malpractice claim against the attorney, asserting the attorney's actions in

directing her to sign the will fell below the applicable standard of care, and constitute a breach of the attorney's contract with the decedent, of which Guy was a third-party beneficiary. *Id.* at 747-48. Further, Guy alleged that the attorney knew or should have known that the decedent owned property in New Jersey, and that it was his "express choice that [she] should be the [primary] beneficiary of all his estate[.]" *Id.* at 748.

The attorney filed preliminary objections, asserting the absence of an attorney-client relationship with Guy, which the trial court sustained. *Guy*, 459 A.2d at 748. On appeal, a panel of this Court reversed, determining that a beneficiary can state a cause of action against an attorney who drafts the will under either a negligence or third-party beneficiary theory. *Id.*

Upon review, the Supreme Court affirmed in part, and reversed in part. *Guy*, 459 A.2d at 753. First, the Court held that Guy could not state a negligence cause of action against the attorney. The Court recognized that its prior decision in *Lawall v. Groman*, 37 A. 98 (Pa. 1897), appeared to permit, at least in dicta, "persons other than clients" to bring legal malpractice actions, if there was "**a specific undertaking on the attorney's part to perform a specific service for a third party**, coupled with the reliance of the third party and the attorney's knowledge of that reliance[.]"[6] *Guy*, 459

---

[6] We note that the malpractice claim in *Lawall* involved an attorney who performed a title search for a borrower. *See Lawall*, 37 A. at 98-99. Although the attorney was hired and paid by the borrower, the mortgagor/plaintiff **specifically requested** the attorney search for other
*(Footnote Continued Next Page)*

A.2d at 749 (emphasis added). The *Guy* Court distinguished the facts before it as follows:

> [A beneficiary] could not have an attorney specifically undertake for her the writing of a testator's will which made her the residuary beneficiary of that will. She could not rely on the attorney's professional expertise because he could not employ his expertise on her behalf in such a manner. Such a beneficiary is left without any remedy for the failed legacy. Because she is a beneficiary, she could not have had privity with the attorney, nor could any specific undertaking have been arranged between them. The intentions of the testator and the expectation of the named beneficiary are thus frustrated under the strict privity rule, despite the dicta in *Lawall*.

*Guy*, 459 A.2d at 749. Accordingly, the Court "retain[ed] the requirement that [a] plaintiff must show an attorney-client relationship or a specific undertaking by the attorney furnishing professional services, as in *Lawall*, as a necessary prerequisite for" a legal malpractice claim rooted in negligence. *Id.* at 750.

Next, the Supreme Court contemplated whether the estate could sue the attorney for malpractice based on the failure of the will "to effectuate the testator's intent." *Guy*, 459 A.2d at 749. The Court held an estate has no standing to bring a lawsuit because it would suffer no harm as a result of a failed legacy. *Id.*

---

liens on the property, **which the attorney agreed to do**. *Id.* at 99. The Supreme Court held that "there was sufficient evidence to submit to the jury on the existence of the relation of attorney and client in the case." *Id.* Conversely, here, there is no allegation Heirs explicitly asked Law Firm to perform any legal tasks on their behalf.

- 10 -

Lastly, the **Guy** Court considered whether Ms. Guy could proceed under a breach of contract malpractice claim as a third-party beneficiary. **See Guy**, 459 A.2d at 750. Relying on Section 302 of the Restatement (Second) of Contracts, the Court approved the following two-part test for determining whether a person is "an intended third[-]party beneficiary: (1) the recognition of the beneficiary's right must be appropriate to effectuate the intention of the parties, and (2) the performance must satisfy an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." **Id.** at 751 (quotation marks omitted).

The Supreme Court further explained:

> Applying these general considerations and Restatement (Second) § 302 to the case of beneficiaries under a will, the following analysis emerges. The underlying contract is that between the testator and the attorney for the drafting of a will. The will, providing for one or more named beneficiaries, clearly manifests the intent of the testator to benefit the legatee. Under Restatement (Second) § 302(1), the recognition of the "right to performance in the beneficiary" would be "appropriate to effectuate the intention of the parties" since the estate either cannot or will not bring suit. Since only named beneficiaries can bring suit, they meet the first step standing requirement of § 302. Being named beneficiaries of the will, the legatees are intended, rather than incidental, beneficiaries who would be § 302(1)(b) beneficiaries for whom "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." In the case of a testator-attorney contract, the attorney is the promisor, promising to draft a will which carries out the testator's intention to benefit the legatees. The testator is the promisee, who intends that the named beneficiaries have the benefit of the attorney's promised performance. **The circumstances which clearly indicate the**

**testator's intent to benefit a named legatee are his arrangements with the attorney and the text of his will.**

*Id.* at 751-52 (emphasis added & footnote omitted). The Court concluded that "persons who are named beneficiaries under a will and who lose their intended legacy due to the failure of an attorney to properly draft the instrument should not be left without recourse or remedy[.]" *Id.* at 752. Therefore, it reversed the decision of the Superior Court, in part, and remanded the case for further proceedings on Guy's contract-based legal malpractice claim.

In subsequent decisions, this Court has emphasized that *Guy* provided a right of recovery for a "narrow" class of legatees as third-party beneficiaries under a breach of contract malpractice claim. *See Hess v. Fox Rothschild, LLP*, 925 A.2d 798, 807 (Pa. Super. 2007); *Gregg v. Lindsay*, 649 A.2d 935, 937 (Pa. Super. 1994). We have also repeated *Guy*'s holding that a beneficiary cannot recover an action in tort for legal malpractice because there is no attorney-client relationship. *See Hess*, 925 A.2d at 808; *Gregg*, 649 A.2d at 937 n.1.

In *Agnew*, the Supreme Court, once again, considered the scope of a legal malpractice claim based upon a failed legacy. In that case, the testator retained the attorney "to draft various estate planning documents[,]" including a will and amendments to a revocable trust. *Agnew*, 152 A.3d at 249 (footnoted omitted). Over the next several years, the attorney drafted various amendments to the documents, which were executed by the testator.

*Id.* As of 2007, the revocable trust amendment directed, *inter alia*, that upon testator's death, the assets would be distributed to four colleges. *Id.*

When the testator entered a hospice program in March of 2010, he met with the attorney to discuss changes to his estate plan. *See Agnew*, 152 A.3d at 249. The testator wanted to "limit the amounts going to charity and provide more funds to" plaintiffs, who are relatives of his late wife. *Id.* at 249-50. The attorney subsequently drafted a revised will (2010 Will) and an amendment to the revocable trust (2010 Trust Amendment), and emailed the documents to the testator in August of 2010. *Id.* at 250. On September 2nd, the attorney met with the testator, who signed the 2010 Will and another estate document. *Id.* The 2010 Will bequeathed specific gifts to certain beneficiaries, including the plaintiffs, and directed that the residue of the estate be transferred to the revocable trust. *Id.* at 249. The testator, however, did not sign the 2010 Trust Amendment at the time because the attorney did not have a copy of the document with him. *Id.* at 250. The testator subsequently died in January of 2011, before executing the 2010 Trust Amendment. *Id.* The attorney later testified in a deposition that he believed the testator "would have signed the amendment" but he could not "say for certain." *Id.* at 251.

The plaintiffs filed both a contract-based and negligence-based legal malpractice action against the attorney. With respect to the contract-based cause of action, they "claimed to be third-party beneficiaries of the [testator's] contract for legal services . . ., and as a result of [the attorney's] breach,

- 13 -

[they] were denied sums of money to which they were entitled under the 2010 Trust Amendment." *Agnew*, 152 A.3d at 251. The plaintiffs also "asserted a legal malpractice claim sounding in negligence[.]" *Id.*

The attorney filed preliminary objections, which the trial court sustained in part. *Agnew*, 152 A.3d at 251. Specifically, the court dismissed (1) all claims by the Estate, because it was not a proper party, and (2) the plaintiffs' negligence-based claims, because they did not have an attorney-client relationship with the attorney. *Id.* However, the court permitted the plaintiff's contract-based claims to proceed, concluding that they "could potentially establish they were intended third-party beneficiaries of the legal services contract[.]" *Id.*

Following discovery, the attorney moved for summary judgment, which the trial court granted. *Agnew*, 152 A.3d at 251. A panel of this Court reversed on appeal, relying upon the deposition testimony of the attorney that "believed he made a mistake by not presenting the 2010 Trust Amendment" to the decedent for his signature in September of 2010, and his failure to do so was an "oversight[.]" *Id.* at 252 (citations & quotation marks omitted). Accordingly, this Court determined that the plaintiffs had standing to sue the attorney because the record "support[ed] an inference that [the attorney] intended to give [them] the benefit of his contract with" the decedent. *Id.* at 254 (citation & quotation marks omitted).

The Pennsylvania Supreme Court reversed the Superior Court's ruling and remanded for reinstatement of the trial court's order granting summary judgment. *Agnew*, 152 A.3d at 248. The Court opined:

> We agree with [the attorney] that the fact [the plaintiffs] were named as beneficiaries in the **unexecuted** 2010 Trust Amendment does not provide them with standing to recover on a contract claim against [the attorney]. Stated another way, we hold an **executed** testamentary document naming an individual as a legatee is a prerequisite to that individual's ability to enforce the contract between the testator and the attorney he hired to **draft that particular testamentary document**. *See*, *e.g.*, *Guy*, *supra* (plaintiff had standing to sue testator's lawyer for mistake in drafting will, where she was named legatee in that will). Although [the plaintiffs] are named heirs in [the decedent's] 2010 Will, they recovered their legacy under that will and we do not consider that document as dispositive of [their] right to sue [the attorney] for any breach related to the **Revocable Trust and its amendments**. In our view, **the dispositive testamentary documents in this claim for breach of contract related to the drafting and execution of the 2010 Trust Amendment, are the 2007 Trust Amendment in which [the plaintiffs] are not named, and the unexecuted 2010 Trust Amendment in which they are named.**

*Id.* at 259 (some emphases added). The Court further distinguished the facts in *Guy* noting in that case, the third-party beneficiary "achieved standing based on an **executed will** in which she was expressly identified," while in the case before it, the plaintiffs "seek to recover for breach of contract based on their being named in a document the testator **never signed**." *Id.* at 260 (emphasis added).

The *Agnew* Court emphasized that, when construing a will, the intention of the testator "must be determined from what appears upon the face of the will[,]" and extrinsic evidence is not permitted "as evidence of a

testator's intention independent of the written words employed." ***Agnew***, 152 A.3d at 262 (citation & quotation marks omitted). Further, the Court opined that policy considerations supported its decision:

> A testator may change an estate plan at any time, adding and subtracting legatees, increasing and decreasing bequests. Under such mercurial circumstances, we decline to confer standing to purported heirs to prosecute a breach of contract action against the testator's attorney on the basis the attorney failed to ensure the testator signed the particular document making a potential bequest.

***Id.*** at 263 (footnote omitted).

> Accordingly, the Court held:

> [The testator's] intent, as reflected in the **executed** testamentary documents, is paramount, and extrinsic evidence may not be considered in undermining that expressed purpose. The client has the ultimate authority to determine the purpose and scope of an attorney's representation. . . . It follows . . . that a testator's purpose in engaging an attorney to draft an estate plan is to benefit (or not) certain persons upon his death. An attorney is obligated to draft documents which carry out the testator's plan regardless of the effects or consequences to any potential beneficiaries. To the extent the attorney has drafted testamentary documents, which have been fully executed by the testator, such documents are conclusive evidence the testator intended to benefit the named beneficiaries, and we hold individuals who are named only in **unexecuted**, consequently invalid documents — such as [the plaintiffs] with respect to the 2010 Trust Amendment — may not claim status as third-party beneficiaries of the legal contract between the testator and his attorney, and may not achieve a legacy through alternate means, such as a breach of contract action. . . .

***Agnew***, 152 A.3d at 264.

- 16 -

With this background in mind, we consider Heirs' claims on appeal.[7] In their first issue, Heirs argue that the trial court erred in sustaining Law Firm's demurrer because they stated a contract-based legal malpractice action against Law Firm as third-party beneficiaries under the two-part test set forth in **Guy**. Heirs' Brief at 24-27. Heirs insist they meet the standing requirement because they are the named beneficiaries in Decedent's **2014 Will**. **Id.** at 27. With regard to the second part of the test — *i.e.*, determining whether Decedent **intended** to benefit Heirs *via* the failed legacy — Heirs assert that **Guy** directs us to consider both the text of the will **and** the "arrangements with the attorney[.]" **Id.** at 28. They maintain that, in the present case, Attorney Vlahos's File Note "qualifies as an admission of a party," and details the "scope, terms and intentions of the contract between [Attorney] Vlahos and [Decedent.]" **Id.** Heirs insist that upon a review of the File Note, "one can reasonably infer that the purpose and intent behind that contract for legal services was to prevent the other spouse's election against a Will under the Probate Code and protect the inheritance of their respective children." **Id.** at 31-32, *citing* **Scarpitti v. Weborg**, 609 A.2d 147 (Pa. 1992). Indeed, they contend: "From this attorney['s] File Note, one can reasonably infer that the third party beneficiary relationship of the Heirs was intended and within the

---

[7] We note that Heirs do not argue on appeal that the Estate has standing to pursue any legal malpractice claims. **See Guy**, 459 A.2d at 749 (holding estate has no standing to bring legal malpractice suit because it suffered no harm from a failed legacy).

contemplation of both [Decedent] and [Attorney] Vlahos." *Id.* at 33. Heirs further argue that Attorney Vlahos breached her contract with Decedent by failing to "fulfill any legal services under the contract" for five months. *See id.* at 34. Accordingly, as a result of Decedent's marriage, Attorney Vlahos's breach "not only affected execution of the new will but also prevented the [2014 Will] from being enforced according to . . . the intentions of" Decedent — that is, "to leave all his property to his children and grandchildren." *Id.* at 35. Therefore, Heirs contend the trial court erred when it found they failed to state a cause of action for legal malpractice under *Guy*.

Heirs' argument focuses solely on the Supreme Court's ruling in *Guy*, while ignoring its subsequent decision in *Agnew*. Nevertheless, we find that facts presented in *Guy* are distinguishable. In that case, the intention of the testator to benefit Guy was evident by the language of the **signed** document. Guy was explicitly named in the will — which was executed by the testator — and her legacy failed solely as a result of the attorney's advice directing her to sign the will as a witness. *See Guy*, 459 A.2d at 747-48. Conversely, here, Heirs rely upon **extrinsic evidence** to establish Decedent's intention. They do not claim, as in *Guy*, that the probated will failed due to Attorney Vlahos's negligence. Rather, Heirs argue that Decedent's stated intention was to leave his inheritance to them, but that changing circumstances (Decedent's marriage to Becky) and Attorney Vlahos's failure to take additional actions, resulted in their failed legacy. Here, Decedent's intent to leave his estate to Heirs as reflected in the 2014 Will was "frustrated" by his marriage to Becky,

not by any negligent act or omission by Attorney Vlahos in drafting the 2014 Will.

Heirs insist, however, that under *Guy*, the trial court was permitted to consider Attorney Vlahos's File Note, which demonstrates Decedent's intent to **revise** his will in 2018 to protect Heirs' inheritance. *See* Heirs' Brief at 28, 31-33. Heirs emphasize that, in *Guy*, the Supreme Court advised that, "[t]he circumstances which clearly indicate the testator's intent to benefit a named legatee are **his arrangements with the attorney** and the text of his will." *Id.* at 28, *citing Guy*, 459 A.2d 752 (emphasis added). They maintain that the File Note details Decedent's arrangements with Attorney Vlahos, specifically, that he "entered into [the] contract for legal services to deal with the anticipated modification by operation of law under the Probate Code of existing Wills upon remarriage." Heirs' Brief at 29. However, again, we emphasize that Heirs ignore the Supreme Court's subsequent decision in *Agnew*, which held that "[t]o the extent [an] attorney has drafted testamentary documents, which have been fully executed by the testator, such documents are conclusive evidence" of the testator's intent, and "individuals who are named only in **unexecuted**, consequently invalid documents . . . may not claim status as third-party beneficiaries[.]" *Agnew*,

152 A.3d at 264. Thus, Heirs are not entitled to relief under *Guy*, and their first issue fails.[8]

In their second claim, Heirs argue the trial court erred when it determined they were entitled to no relief under *Agnew*. *See* Heirs' Brief at 36. They insist that the "facts, circumstances and legal malpractice claim in this case are markedly different than *Agnew* and require a different result under the test for standing." *Id.* Heirs emphasize that, in the present case, Decedent contracted with Attorney Vlahos to protect the beneficiaries named in his 2014 Will, while in *Agnew*, the testator sought to amend a trust to name **new** beneficiaries. *See id.* at 36-37. They assert the *Agnew* Court noted the record "did not contain a retainer agreement or other contract for legal services . . . for the Court to use in the analysis of [the testator's] intentions . . . with respect to the third[-]party beneficiary issue." *Id.* at 37-38 (citation omitted). Here, however, Heirs insist the "terms of the contract set forth in a detailed File Note show that [they] were contemplated third[-]party beneficiaries of the contract." *Id.* at 37. Heirs also emphasize that while the Supreme Court did not permit the use of extrinsic evidence to establish the testator's intent in *Agnew*, it did leave open the possibility that extrinsic evidence may be admissible "to prove a testator's intent in other contexts." Heirs' Brief at 39, *citing Agnew*, 152 A.3d at 264, n.15.

---

[8] We note, too, that the *Guy* Court did not rely upon extrinsic evidence to determine the decedent's intent.

Heirs further argue that the case before us "presents an entirely different set of circumstances than" those in ***Agnew***.  Heirs' Brief at 41.  Here, Decedent never had the opportunity to review the proposed revised will due to Attorney Vlahos's failure to take any action for five months, while in Estate of ***Agnew***, the testator reviewed the revised trust agreement but for some reason, did not sign the draft.  ***Id.***  Moreover, Heirs emphasize that, unlike ***Agnew***, this case does not involve "only an unexecuted and invalid document" — rather, Decedent's intentions are clear based on the **executed** 2014 Will **and** Attorney Vlahos's File Note.  ***Id.*** at 42 (quotation marks omitted).  ***See id.*** at 43 (referring to these documents as "[t]he best evidence of [Decedent's] intention").  Heirs contend "[t]he equities in this case favor the admission of extrinsic evidence," namely, Attorney Vlahos's File Note.  ***Id.*** at 43.

Heirs also insist that policy concerns expressed by the ***Agnew*** Court are not present in this case.  Heirs' Brief at 44.  They maintain the Supreme Court sought to "prevent the proliferation of suits in which a beneficiary sues the testator's attorney in an attempt to gain a larger share of an estate than is provided in the operative will."  ***Id.*** at 44-45.  Therefore, they contend the courts of this Commonwealth have denied standing when "the legatee's claim was premised solely on an unexecuted document which named the legatee as a beneficiary for the first time."  ***Id.*** at 45.  Heirs assert, however, that the present case "involves loss of a legacy in an executed will" and that a recent unpublished decision of this Court "allowed a third[-]party beneficiary claim for a lawyer's dilatory failure to prepare and deliver an unexecuted codicil."

*Id.* at 46, *citing **Begley v. Rhoads & Sinon LLP***, 155 MDA 2014, 2015 WL 7432994 (unpub. memo.) (Pa. Super. 2015). Heirs also contend another unpublished decision of this Court, ***Schmidt v. Rosin***, 1310 EDA 2019, 2020 WL 3866052 (unpub. memo.) (Pa. Super. 2020), involves "analogous" circumstances. Heirs' Brief at 49.

In the present case, the trial court found the Supreme Court's decision in ***Agnew*** controlled. The court opined:

> The[ ] facts [presented in this case] are indistinguishable from those presented in ***Agnew***, except perhaps that ***Agnew***'s facts are stronger given the failed instrument in that case was reviewed and apparently approved by [the testator], and [the attorney] acknowledged [the testator] probably would have signed the document but for [the attorney's] failure to present it to him. In the case at bar, [Decedent] never even saw the document the Heirs say should determine their inheritance.
>
> The Heirs attempt to distinguish ***Agnew*** by arguing that unlike the third-party beneficiaries in ***Agnew***, [Heirs] were named legatees in the 2014 [W]ill, which was modified by operation of law due to [Attorney] Vlahos's failure to timely draft a new will. The court did not find that argument persuasive, or even permissible, under ***Agnew*** since its success would depend on extrinsic evidence virtually identical to that rejected in ***Agnew***. Further, the Heirs' argument that being named in a prior properly executed will should serve to invalidate that will in favor of a subsequent unexecuted will was rejected since it leads to the absurd result, again relying on extrinsic evidence, that the very will [Decedent] retained [Attorney] Vlahos to change would be used to prove he did not intend to change it, at least not in any way disadvantageous to the Heirs.

Trial Ct. Op., 5/26/22, at 9-10 (quotation marks omitted).

Upon our review of the record and relevant case law, we agree with the ruling of the trial court. The ***Agnew*** Court made clear that a testator's intent,

with regard to a proposed legacy, must be derived only from testamentary documents that have been "fully executed by the testator." *Agnew*, 152 A.3d at 264. Consequently, "individuals who are named only in **unexecuted** . . . documents . . . may not claim status as third-party beneficiaries of the legal contract between the testator and his attorney, and may not achieve a legacy through alternate means, such as a breach of contract action." *Id.* Here, Heirs contend they are third-party beneficiaries of Decedent's legal contract with Attorney Vlahos based upon purported discussions between Decedent and Attorney Vlahos that do not appear in an executed testamentary document. Thus, under *Agnew*, they are entitled to no relief.

Furthermore, we reject Heirs' attempt to distinguish *Agnew* on its facts. Although they emphasize that that they were explicitly named beneficiaries in Decedent's 2014 Will, their allegation of legal malpractice does not relate to that will. In other words, Heirs' legacy did not fail because of Attorney Vlahos's legal advice concerning the 2014 Will or her drafting of that will. *See Agnew*, 152 A.3d at 259 (holding "an **executed** testamentary document naming an individual as a legatee is a prerequisite to that individual's ability to enforce the contract between the testator and the attorney he hired to draft **that particular testamentary document**") (some emphasis added). Rather, their intended legacy under the 2014 Will was thwarted due to a change in circumstances that did not involve Attorney Vlahos, namely, Decedent's marriage to Becky. Although Heirs argue that Decedent's intention was to preserve their inheritance even **after** his marriage, the only proof they have

of that assertion is extrinsic evidence — Attorney Vlahos's File Note. That "File Note" however is no different from the proposed, unexecuted 2010 Trust Amendment rejected by the Supreme Court in *Agnew*. As the Court explained, "[a] testator may change an estate plan at any time, adding and subtracting legatees, increasing and decreasing bequests." *Agnew*, 152 A.3d at 263. Until Decedent signed a revised will, his purported intent to continue to leave his entire estate to Heirs remains unknown.

Furthermore, Heirs ignore the fact that in *Agnew*, as here, the plaintiffs were **named beneficiaries** in another testamentary document (the 2010 Will) that was probated. *See Agnew*, 152 A.3d at 249-50. However, the *Agnew* Court concluded that fact did not establish the plaintiffs' standing to assert a breach of contract claim against the attorney who drafted the unexecuted 2010 Trust Amendment. The Court opined:

> Although [the plaintiffs] are named heirs in [the testator's] 2010 Will, they recovered their legacy under that will and we do not consider that document as dispositive of [their] right to sue [the attorney] for any breach related to the Revocable Trust and its amendments. In our view, the dispositive testamentary documents in this claim for breach of contract related to the drafting and execution of the 2010 Trust Amendment, are the 2007 Trust Amendment in which [the plaintiffs] are not named, and the **unexecuted** 2010 Trust Amendment in which they are named.

*Id.* at 259. We recognize that in the present case, Heirs were the named beneficiaries in the 2014 Will. However, while that will establishes Decedent's intent to leave them his estate to Heirs **at that time**, it does not establish his intent to continue to leave his entire estate to Heirs after his marriage to

Becky. Therefore, Heirs' standing to assert a legal malpractice claim with respect to the 2014 Will does not translate to their standing to assert a malpractice claim with regard to an unexecuted revised will.

We also conclude that Heirs' reliance on two unpublished decisions of this Court provide no basis for relief. Preliminarily, we note that Pennsylvania Rule of Appellate Procedure 126 permits a party to cite, for persuasive value, an "unpublished non-precedential memorandum decision of [this Court] **filed after May 1, 2019**[.]" Pa.R.A.P. 126(b)(1)-(2) (emphasis added). Conversely, "[t]his Court's memorandum decisions filed on or before May 1, 2019 **may not be cited for any reason** other than for purposes of law of the case and related doctrines." *LSF8 Master Participation Tr. v. Petrosky*, 271 A.3d 1288, 1292 (Pa. Super. 2022). Accordingly, Heirs' citation to and reliance on *Begley*, which was filed on March 9, 2015, is improper.[9]

_____

[9] Even if we were permitted to consider *Begley* for its persuasive value, it is distinguishable on its facts. In that case, Wife executed a will that "bequeathed all property subject to Wife's powers of appointment to Husband." *Begley*, 155 MDA 2014 (unpub. memo. at 6). At that time, Wife was "the lifetime income beneficiary of a trust settled by her mother" and under that trust, Wife "had the power to appoint the assets of the [trust] by specific reference in her Will." *Id.* at 2 (footnote omitted). The language of the will did not "specifically reference the power of appointment" in the trust. *Id.* Thus, shortly before Wife's death, Husband contacted the attorneys who drafted the will and requested they prepare a codicil to Wife's will "that specifically exercised the power of appointment in Husband's favor." *Id.* at 3. The attorneys failed to do so before Wife's death, and the "significant assets in the [trust] were not appointed to Husband[.]" *Id.* Husband subsequently sued the attorneys for legal malpractice. *Id.* at 3-4. The trial court sustained the attorneys' preliminary objections, and dismissed the complaint, finding,
*(Footnote Continued Next Page)*

Further, Heirs' reliance on **Schmidt v. Rosin**, **supra**, for persuasive authority also fails. First, **Schmidt** did not involve a failed legacy based upon alleged legal malpractice by an attorney who drafted testamentary documents. Second, the 2020 **Schmidt** decision upon which Heirs rely was subsequently vacated by the Pennsylvania Supreme Court in a *per curiam* order. **See Schmidt v. Rosin**, 248 A.3d 415, 354 EAL 2020 (Pa. 2021). The Supreme Court remanded the case back to this Court for consideration of whether one of the plaintiffs — who asserted a legal malpractice claim against an attorney as an intended third-party beneficiary of a legal contract —"raised and preserved a contract-based theory" of relief. **Id.** Upon remand, this Court determined that the purported third-party beneficiary did **not** preserve the claim, and, therefore, was entitled to no relief. **See Schmidt v. Rosin**, 2021

---

*inter alia*, that Husband had no standing to assert a claim against the attorneys. **Id.** at 4.

A panel of this Court reversed that part of the trial court's ruling on appeal, and remanded for further proceedings. **Begley**, 155 MDA 2014, at 8. Critically, the panel determined that Husband was a "named legatee" in Wife's will, and that the "text of the will" supported Husband's claim that "Wife intended for her will to appoint the assets of the [trust] in favor of Husband." **Id.** at 6-7. Moreover, Husband alleged in the complaint that "the only reason Wife's will did not effectuate this testamentary intent is that Wife was unaware of the requirement of specificity[, and o]nce she was made are of [it], she requested that [the attorneys] rectify this oversight." **Id.** at 7-8. Consequently, the panel concluded Husband had standing to bring a legal malpractice claim as an intended third-party beneficiary. **Id.** at 8.

Here, however, Heirs rely upon Attorney Vlahos's File Note to establish their claim that Decedent intended to protect their inheritance in a revised will after his marriage to Becky.

WL 2394591, 1310 EDA 2019 (Pa. Super. 2021) (unpub. memo. at 10). Therefore, any discussion of this claim in the prior, vacated decision of this Court is of no moment.[10] Accordingly, Heirs' second claim fails.

Lastly, Heirs argue the trial court erred when it dismissed their negligence-based claim because Attorney Vlahos's File Note established the requisite "privity," that is, she engaged in a "specific undertaking" to furnish legal services to Heirs. *See* Heirs' Brief at 50-51. Relying upon Section 51(3) of the Restatement (Third) of the Law Governing Lawyers, Heirs argue that a lawyer owes a duty to a nonclient when: (1) the lawyer knows that their client intended for the lawyer's services to benefit the nonclient "as one of the primary objectives[;]" (2) the duty to the nonclient would "not significantly impair the lawyer's performance of obligations to the client; and" (3) "the absence of such a duty would make enforcement of those obligations to the client unlikely." *Id.* at 53, *citing* Restatement (Third) of the Law Governing Lawyers § 51(3)(a)-(c) (2000). Further, they insist all three elements are present here. *See* Heirs' Brief at 53-64. Heirs also contend that, in violation of the Pennsylvania Rules of Professional Conduct, Attorney Vlahos "neglected her ethical duty to point out the potential conflict between concurrent

---

[10] We note, however, that the 2020 **Schmidt** panel determined the third-party beneficiary had standing based upon an executed document, which was later hindered due to the attorney's dilatory conduct in drafting that document. **See Schmidt**, 2020 WL 3866052, at *3, 5. Conversely, here, the Decedent's "intent" to preserve Heirs' inheritance **after** his marriage to Becky is not evident in any **executed** document.

representation of [Decedent] and his future wife and obtain the requisite written waiver." Heirs' Brief at 57.

Heirs' negligence-based legal malpractice claim fails for several reasons. First, the *Guy* Court rejected any negligence-based legal malpractice claims brought by a nonclient unless there is a "specific undertaking by the attorney furnishing professional services[.]" *Guy*, 459 A.2d at 750. Here, there is no allegation that **Heirs specifically requested** Attorney Vlahos to provide any services on their behalf, **or** that **Attorney Vlahos specifically agreed** to do so. *Compare Lawall*, 37 A. at 98-99. Furthermore, this Court has consistently relied upon **Guy**'s holding that a third-party beneficiary may not recover under a negligence-based legal malpractice claim since there is no attorney-client relationship. *See Hess*, 925 A.2d at 808; *Gregg*, 649 A.2d at 937 n.1.

Heirs attempt to skirt this settled law by invoking Section 51 of the Restatement (Third) of the Law Governing Lawyers. First, Heirs did not assert the applicability of the Restatement before the trial court. For that reason alone, this argument is waived. *See* Pa.R.A.P. 302(a) ("issues not raised in the trial court are waived and cannot raised for the first time on appeal."). Second, our review reveals that no Pennsylvania published decision has cited, let alone adopted, Section 51 of the Restatement (Third) of the Law Governing Lawyers. Thus, in light of the Supreme Court's explicit direction in *Guy*, we decline to apply the Restatement in order to obtain a different result here. Heirs' reference to Attorney Vlahos's ethical duties pursuant to the

Pennsylvania Rules of Professional Conduct similarly fails because they have no standing to assert any negligence-based malpractice claims against her.

Accordingly, our review reveals no error of law in the trial court's ruling sustaining Law Firm' preliminary objections in the nature of a demurrer, and dismissing Heirs' complaint with prejudice. ***See Fiedler v. Spencer***, 231 A.3d at 835–36.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/29/2022